IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BARKAT S. HOODA, M.D., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-5022 |
| | § | |
| WCA SERVICES CORPORATION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

I.  **Background**

The plaintiff, Barkat Hooda, M.D., sued his former employer, WCA Services Corporation, asserting causes of action for libel, slander, and negligence. WCA is a New York corporation. Hooda worked for WCA at its hospital in Jamestown, New York from October 2009 until he left in June 2010. Hooda was employed by the Southern Tier Pediatrics clinic at the WCA Hospital as a general pediatrician and had dual certifications in General Pediatrics and Pediatric Hematology Oncology. In June 2010, Hooda moved to Texas to take a position as an Associate Professor of Pediatric Hematology Oncology at the University of Texas Medical Branch School of Medicine. In this lawsuit, Hooda alleges that he resigned from the clinic in May, 2010, and left the Jamestown WCA Hospital in June 2010, because he believed that "WCA and some of their Obstetricians demonstrated a pattern of opting to deliver and care for premature/high-risk infants in house rather than promptly referring or transferring them to the appropriate tertiary hospital or facility. . . . On information and belief, WCA retained premature and high-risk infants because of the substantial revenue gains associated with treating sick babies in their own facility." (Docket Entry No. 1,

1

Complaint, ¶¶ 20, 29–30).

On August 26, 2010, WCA filed a report with the federal Department of Health and Human Services National Practitioner Data Bank ("NPDB") stating that Hooda had left his position at the Jamestown hospital while an investigation into his performance as a physician was pending. (*Id.*, ¶ 88). The investigation arose from the stillborn birth of a baby on June 2, 2010, shortly before Hooda left the hospital. Hooda asserts that he was not aware of this investigation. (*Id.*, ¶ 12). According to Hooda's complaint in this lawsuit, the report filed with the NPDB falsely asserted that Hooda had "failed to answer the call to attend the June 2, 2010 delivery" and that "WCA launched an internal investigation of the matter and took action by terminating Dr. Hooda's privileges for his alleged failure to attend the delivery." (*Id.*, ¶¶ 92–93). Hooda alleges that after he resigned and left the Jamestown hospital, "WCA launched a bogus investigation and filed a false report with the U.S. Department of Health and Human Services National Practitioner Data Bank [] about Dr. Hooda after Dr. Hooda expressed concerns with hospital management about WCA not having the proper facilities and staff to deliver and care for high-risk and premature infants." (*Id.*, ¶ 11). Hooda further alleges that in filing the report, WCA employees were acting on previously voiced threats to sabotage his career. (*Id.*, ¶¶ 22–24, 91)

In December 2010, Hooda filed this suit against WCA and its CEO, Betsy Wright. Hooda's forum choice, the Southern District of Texas, is where he currently lives and works. Hooda alleges that filing the report was libelous, defamatory, fraudulent, and negligent, and that it tortiously interfered with his employment at UTMB. Hooda alleges that the filing of this report has created problems for his medical license and his ability to work as a doctor. (*Id.*, ¶ 14). He seeks damages and an injunction requiring WCA to "withdraw and void the false report from the NPDB, through

2

any and all procedures mandated by the NPDB, while this action is pending," so that he can obtain his license and retain his UTMB employment. (*Id.*, ¶ 198).

WCA and Wright have moved to dismiss for lack of personal jurisdiction and improper venue and alternatively requested that this court transfer the case to the Western District of New York. (Docket Entry No. 9).[1] Wright has submitted a declaration setting out the absence of any Texas contacts by herself as WCA's president and CEO and by WCA. Wright's declaration also explains that the events at issue in this case took place in the Western District of New York and that all the witnesses to those events live or work in that district. (Docket Entry No. 9, Ex. 1). The defendants argue that they have insufficient contacts to establish general or specific personal jurisdiction in Texas, and that New York is the proper venue for the case. Hooda responded, (Docket Entry No. 21); the defendants replied, (Docket Entry No. 22); and Hooda surreplied, (Docket Entry No. 23). Hooda's response includes his own affidavit explaining in more detail his version of the events that led to his decision to leave the clinic and resign from the WPA Hospital and the effects of the report on his license and his employment. (Docket Entry No. 21, Ex. 1). This court heard oral argument on the motion on May 27, 2011.

## II. The Legal Standard for Personal Jurisdiction

When a nonresident defendant challenges *in personam* jurisdiction, the plaintiff bears the burden of demonstrating facts sufficient to support jurisdiction. *Johnston v. Multidata Systems Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the

---

[1] Hooda also sued other doctors at the Jamestown hospital. These doctors moved to dismiss for lack of personal jurisdiction. Hooda then dismissed his claims against these doctors, without prejudice. (Docket Entry No. 11, 31–32).

3

recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citations omitted). "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson v. Bolin*, 20 F.3d 644, 648 (5th Cir. 1994)). The court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000) (quoting *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999)) (additional citations omitted). However, the court is not obligated to credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the long-arm statute of the forum state confers personal jurisdiction over that defendant, and the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *See Panda*, 253 F.3d at 867. Texas's long-arm statute extends to the full limits of due process, collapsing the inquiry into the single question of whether personal jurisdiction would be consistent with the Due Process Clause of the Fourteenth Amendment. TEX. CIV. PRAC. & REM. CODE § 17.042(2); *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424–25 (5th Cir. 2005).

The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when that defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state, and

4

the exercise of jurisdiction over that defendant would be fair and reasonable. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (citing *Nuovo Pigone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)). Minimum contacts can be established through events giving rise to either general or specific jurisdiction. *Freudensprung v. Offshore Tech. Serv. Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Id.* General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are "continuous and systematic." *Id.* (quoting *STORMAN ASIA M/V*, 310 F.3d at 378). General jurisdiction as to WCA and Wright is not present; they do not maintain continuous and systematic contact with Texas. *Helicopteros Nationales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1994). (Docket Entry No. 9, ¶ 24). The parties agree that specific jurisdiction is the issue.

To decide specific jurisdiction, a court must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772 (5th Cir. 1988) (citations omitted). There must be a sufficient nexus between the nonresident defendant's contacts with the forum and the cause of action. *ICEE Distribs., Inc. v. J & J Snack Foods Corp.*, 325 F.3d 586, 591 (5th Cir. 2003); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). Even a single contact can support specific jurisdiction if the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). Purposeful availment of the forum state exists when "the defendant's conduct and connection with the forum state are such that [the

5

defendant] should reasonably anticipate being haled into court there." *STORMAN ASIA M/V*, 310 F.3d 374, 379 (5th Cir. 2002) (quoting *Burger King*, 471 U.S. at 474). While foreseeability is important, the requirement of purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, . . . or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475; *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

Recent Texas Supreme Court and Fifth Circuit cases applying Texas law on specific personal jurisdiction based on the in-state "effects" on the plaintiff of acts committed by out-of-state defendants have made it clear that the inquiry is not focused on those effects but rather on the "actions and reasonable expectations of the defendant." *See Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir. 2010); *Wilson v. Belin*, 20 F.3d 644 (5th Cir. 1994); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788 (Tex. 2005); *San Pedro Impulsora de Inmuebles Especiales, S.A. de C.V. v. Villarreal*, 330 S.W.3d 27 (Tex. App. — Corpus Christi Nov. 18, 2010, no pet. h.). The Texas Supreme Court recently emphasized several aspects of a nonresident's "purposeful availment" of the privilege of conducting activities in the forum state. "First, it is only the defendant's contacts with the forum that count," not the "unilateral activity of another party or a third person." *Michiana*, 168 S.W.3d at 785 (internal quotations omitted). "Second, the acts relied on must be purposeful rather than fortuitous . . . a defendant will not be haled into a jurisdiction solely based on contacts that are random, isolated, or fortuitous." *Id.* (internal quotations omitted). In *Michiana*, the Texas Supreme Court also made it clear that merely alleging that a defendant in a foreign state made tortious statements or communications that had harmful effects directed to or in Texas cannot be the basis for specific personal jurisdiction in Texas. The Court expressly rejected

personal jurisdiction based on the alleged effects of a tort, as opposed to where the defendant's contacts related to the events at issue occurred. The Court noted that focusing on where the defendant allegedly directed a tort incorrectly emphasized the relationship among the plaintiff, the forum, and the litigation, rather than among the defendant, the forum, and the litigation. The minimum-contacts analysis properly focuses "solely on the actions and reasonable expectations of the defendant." 168 S.W.3d at 790 (citing *Burger King*, 471 U.S. at 481–82). The Court held that looking at where the effect of an alleged "tort was directed," as opposed to the defendant's contacts with the forum relating to the subject matter of the litigation, improperly conflates the jurisdictional inquiry with the underlying merits, because the nonresident defendant can defeat jurisdiction only by showing that there was no tort. "Jurisdiction cannot turn on whether a defendant denies wrongdoing—as virtually all will. Nor can it turn on whether a plaintiff merely alleges wrongdoing—again as virtually all will. If committing a tort establishes jurisdiction, our colleagues will have to decide who is correct—and then the Texas jurisdictional rule will be: guilty nonresidents can be sued here, innocent ones cannot." *Id.* at 791. "Instead, it is 'the defendant's conduct and connection with the forum' that are critical." *Id.* at 798 (citing *Burger King*, 471 U.S. at 474). Even allegations that the defendants directed or expected the tortious injury to occur in Texas are insufficient to show that they purposely availed themselves of the benefits of doing business in the state if the defendants did not otherwise have sufficient contacts with the State. *See Asshauer v. Farallon Capital Partners, L.P.*, 319 S.W.3d 1, 8 (Tex. App.—Dallas 2008, no pet.) ("Specific jurisdiction is not established merely by allegations or evidence that a nonresident committed a tort in the forum state or 'directed a tort' at the forum state." (citing *Michiana*, 168 S.W.3d at 790–92)). The foreseeable effects of a foreign defendant's alleged tort committed outside the forum state are

7

assessed as part of the defendant's minimum contacts with the forum state, but effects alone are insufficient to confer specific jurisdiction absent purposeful acts by the defendant directed toward the state. *See Burger King*, 471 U.S. at 462; *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997); *Jobe v. ATR Marketing, Inc.*, 87 F.3d 751, 753–54 (5th Cir. 1996). Examples of conduct that are not too "fortuitous" or "attenuated" to qualify as purposeful availment include the intent to contract or profit through the activity, advance a career, or target an audience of residents in the forum state. *See Fielding v. Hubert Burda Media, Inc.*, 415 F. 3d 419, 425 (5th Cir. 2005); *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994); *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 340 (Tex. 2009). Activities that fall short of this standard include answering the phone and complying with a government investigation. *Clemens*, 615 F. 3d at 379–80; *Wilson*, 20 F. 3d at 648–50.

## II.   Analysis

The question in this case is whether the defendants' contacts with Texas related to the submission of the report about Hooda to the NPDB constitute "purposeful availment of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws," such that the defendants should reasonably anticipate being haled into court in Texas over that report. *Burger King*, 471 U.S. at 475. Hooda's allegations and evidence are that WCA and Wright committed a tort outside Texas by submitting a false report to the NPDB after Hooda had moved to Texas to take a job there. The sole basis for specific jurisdiction is the effects in Texas of the New York defendants submitting the allegedly false report from New York to the NPDB. Even assuming that the defendants knew that Hooda had relocated to work in Texas when they submitted their report, that is insufficient as a matter of law to provide a basis for a Texas court to exert personal

8

jurisdiction over them. Hooda has not alleged or presented evidence of any contacts made by the defendants with the State of Texas that could support a finding of specific personal jurisdiction. Hooda's argument that the defendants knew that their allegedly false report would affect him in Texas is not sufficient to support a finding of specific personal jurisdiction under the recent Texas Supreme Court and Fifth Circuit cases. The effects were felt in Texas solely because of Hooda's unilateral decision to relocate to this State. But "only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or third person." *Moki Mac*, 221 S.W.3d at 575. *See also Retamco*, 278 S.W.3d at 340 (finding personal jurisdiction appropriate because defendant accepted transfer of Texas real property even though transaction occurred outside of Texas). When the focus is on the defendants' actions, it is clear that there is no basis to find specific personal jurisdiction over them. WCA and Wright sought no "benefit, advantage or profit in Texas" by filing the NPDB report. *Michiana*, 168 S.W.3d at 787. The defendants filed the report in New York, about activities that occurred in New York, and did not specifically address it to an audience of Texas residents. The defendants' filing does not show any intent to benefit from Texas laws. The out-of-state defendants' conduct that took place out-of-state is insufficient to establish specific personal jurisdiction in this State, as a matter of law.

The remaining issue is whether to dismiss this case without prejudice for lack of personal jurisdiction or transfer it to a forum where both jurisdiction and venue are proper.

## III. Transfer

When federal jurisdiction is based on diversity, venue is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part

of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a). Venue is improper in the Southern District of Texas because no defendant resides in this district, a substantial portion of the events giving rise to the claim occurred in Jamestown, New York, and this court does not have personal jurisdiction over the defendants. When venue is improper in the district where the case is filed, a court may, "if it be in the interest of justice, transfer such a case to any district or division in which it could have been brought" rather than dismissing the case. 28 U.S.C. §1406; *Dubin v. U.S.*, 380 F.2d 813, 816 (5th Cir. 1967); *Burr v. Transohio Savings Bank*, 77 F.3d 477 (table), 1995 WL 798590, at *3 n.8 (5th Cir. Dec. 27, 1995).

This case could have been brought in the Western District of New York, where WCA and Wright are located, where events giving rise to the claim occurred, and where personal jurisdiction over the defendants is proper. This case is transferred to the Western District of New York, Buffalo Division, under 28 U.S.C. § 1406.

V.   **Conclusion**

The defendant's motion to dismiss, (Docket Entry No. 9), is granted. The case will be transferred by separate order to the Western District of New York, Buffalo Division.

SIGNED on June 3, 2011, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge