**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**BARKAT S. HOODA, M.D.,**

**Plaintiff,**

**-vs-** **11-CV-00504A(Sr)**

**W.C.A. SERVICES CORPORATION**
**d/b/a WCA HOSPITAL, and**
**BETSY T. WRIGHT,**

**Defendants.**

---

**REPORT, RECOMMENDATION AND ORDER**

By order entered June 3, 2011, Hon. Lee H. Rosenthal, United States District Judge for the Southern District of Texas, Houston Division, transferred this case to the Western District of New York (Dkt. #37), whereupon it was assigned to the docket of the Hon. Richard J. Arcara and referred to the undersigned for all pretrial matters and to hear and report upon dispositive motions, pursuant to 28 U.S.C. § 636(b)(1). Dkt. #43.

Currently pending are defendants' motions to set aside, and to stay enforcement of, Judge Rosenthal's order to the extent it granted plaintiff's request for attorney's fees incurred as a result of defendants' failure to waive service under Rule 4 of the Federal Rules of Civil Procedure. Dkt. ##51 & 52. Also pending is plaintiff's motion to dismiss defendants' counterclaim, pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. #54.

## FACTUAL AND PROCEDURAL BACKGROUND

This diversity action was originally commenced in the Southern District of Texas by Barkat S. Hooda, M.D., against his former employer, WCA Services Corporation d/b/a WCA Hospital ("WCA"), located in Jamestown, New York, and its CEO, Betsy Wright.[1] Plaintiff, now a resident of Webster, Texas, seeks injunctive relief and damages based on causes of action for defamation, tortious interference with prospective business relations, conspiracy to damage his professional reputation, and negligent failure to conduct a proper investigation of the events forming the basis for an adverse report regarding plaintiff's performance as a physician at WCA Hospital, filed by WCA with the United States Department of Health and Human Services' National Practitioner Data Bank ("NPDB"). Dkt. #1.

The underlying facts, set forth in the pleadings and submissions on file and summarized by Judge Rosenthal in her Memorandum and Opinion, are only briefly restated here. Plaintiff was employed by Southern Tier Pediatrics in Jamestown as a General Pediatrician, with staff privileges at WCA Hospital, from October 2009 until May 2010, when he gave notice of resignation in order to take a position as an Associate Professor at the University of Texas Medical Branch School of Medicine. He alleges that he resigned from Southern Tier because of his concerns about WCA Hospital's "demonstrated … pattern of opting to deliver and care for premature/high-risk infants in house rather than promptly referring or transferring them to the appropriate tertiary hospital or facility." Dkt. # 1, ¶ 29. He was still working at WCA Hospital on June 2, 2010, when

[1] Plaintiff also sued other physicians at WCA Hospital, but later voluntarily dismissed those claims, without prejudice, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). Dkt. ##11-12, 31-34.

he was called to the hospital to assist with a high-risk delivery of a premature infant, which resulted in still birth. *Id.* at ¶¶ 40-53.

On August 26, 2010, after plaintiff left for Texas, WCA filed an adverse report with the NPDB regarding plaintiff's performance of his duties as the attending physician on June 2, 2010, and his relocation to Texas while the investigation into his performance was pending. Plaintiff claims that this "false and disparaging report … is a complete fabrication calculated to destroy [his] reputation and career, while protecting WCA's own financial interests." *Id.* at ¶¶ 88, 96. He alleges that having this report on his record has interfered with his ability to obtain a Texas medical license and has otherwise adversely affected his employability, resulting in loss of income, prospective business opportunities, damage to his professional reputation, emotional distress, and humiliation. *Id.* at ¶¶ 121-24.

As reflected on the Court's docket and in the parties' motion papers, plaintiff filed the complaint on December 16, 2010, and plaintiff's counsel sent defendants a letter dated December 17, 2010, transmitting a copy of the complaint along with appropriate documentation requesting waivers of formal service of summons pursuant to Fed. R. Civ. P. 4(d)(1).[2] *See* Dkt. ##18-1, 18-2. Defendants' counsel responded to the request for waiver of service by letter dated January 20, 2011, stating as follows:

> With regard to your correspondence directed to W.C.A. Service Corporation, d/b/a WCA Hospital, since there is no personal jurisdiction over this defendant, or, I suspect, any of the defendants, on behalf of W.C.A. Service

---

[2]Rule 4(d)(1) provides:

> **Requesting a Waiver.** An individual, corporation, or association that is subject to service [in a judicial district of the United States] has a duty to avoid unnecessary expenses of serving the summons. The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons.

Fed. R. Civ. P. 4(d)(1).

> Corporation and Betsy Wright, neither the hospital nor Betsy Wright will be executing any waiver of the service of summons.

Dkt. #19-3. Defendants were formally served with a copy of the summons and complaint on February 8, 2011.

On February 28, 2011, defendants WCA and Wright moved to dismiss the action for lack of personal jurisdiction and improper venue, or alternatively, to transfer the case to the Western District of New York, where venue is proper and personal jurisdiction over defendants could be obtained. Dkt. #9. Then, on March 16, 2011, plaintiff filed a motion pursuant to Fed. R. Civ. P. 4(d)(2) for recovery of expenses incurred as a result of defendants' refusal to waive service without good cause, including attorney's fees for making the motion. Dkt. #18. On June 3, Judge Rosenthal granted defendants' motion to dismiss for lack of personal jurisdiction and transferred the case to this district, making no ruling on, or mention of, plaintiff's motion for attorney's fees. Dkt. #37.

Upon transfer, defendants served and filed their answer which included a counterclaim against plaintiff based on "false statements and unsubstantiated allegations" contained in the complaint. Dkt. #48, ¶¶ 33, 34. Defendants also moved to set aside Judge Rosenthal's order to the extent it granted plaintiff's motion for attorney's fees (Dkt. #51), and to stay enforcement of that order pending disposition of the motion to vacate. Dkt. #52. Plaintiff then moved to dismiss the counterclaim, pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. #54.

For the reasons that follow, it is recommended that defendants' motions to set aside and stay enforcement of Judge Rosenthal's ruling on attorney's fees be denied, and it is further recommended that plaintiff's motion to dismiss defendants' counterclaim be denied.

## DISCUSSION AND ANALYSIS

### I. Motion to Set Aside Judge Rosenthal's Ruling to the Extent it Granted Plaintiff's Request for Attorney's Fees for Failure to Waive Service

As an initial matter, notwithstanding the lack of a specific ruling with respect to plaintiff's motion for expenses and attorney's fees, the entry on this Court's docket for Judge Rosenthal's June 3, 2011 Memorandum and Opinion reads as follows:

> MEMORANDUM AND OPINION Granting [18] MOTION for Attorney Fees and Mooting [9] MOTION to Dismiss *for Lack of Personal Jurisdiction and Improper Venue, or Alternatively, Motion to Transfer to the Western District of New York.*

Dkt. #37. Based upon its thorough reading of Judge Rosenthal's opinion and order, this Court interprets the docket entry for # 37 as a clerical error, and gives it no force or effect.

Nevertheless, a brief review of the requirements for implementing the mandatory waiver provisions of Rule 4(d) suggests that, under the circumstances presented, plaintiff is entitled to recover the reasonable expenses incurred in effecting service on defendants WCA and Wright, including attorney's fees for making the motion to collect the costs of service. Federal Rule of Civil Procedure 4(d)(2) provides:

> **Failure to Waive.** If a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant:
>
> (A) the expenses later incurred in making service; and
>
> (B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses.

Fed. R. Civ. P. 4(d)(2). Defendants contend they had good cause for refusing to waive service–namely, lack of personal jurisdiction, as ultimately determined by Judge Rosenthal in her Memorandum and Opinion. However, as stated in the Advisory Committee Notes to the 1993 amendments to Rule 4(d):

> The aims of the provision are to eliminate the costs of service of a summons on many parties and to foster cooperation among adversaries and counsel. The rule operates to impose upon the defendant those costs that could have been avoided if the defendant had cooperated reasonably in the manner described.
>
> * * *
>
> A defendant failing to comply with a request for waiver shall be given an opportunity to show good cause for the failure, but sufficient cause should be rare. It is not a good cause for failure to waive service that the claim is unjust or that the court lacks jurisdiction.

Fed. R. Civ. P. 4(d), advisory committee's note (1993 Amendments). *See also Bozell Group, Inc. v. Carpet Co-op of America Ass'n*, 2000 WL 1523282, at *4 n. 1(S.D.N.Y. Oct. 11, 2000) (defense of lack of jurisdiction does not constitute "good cause" excusing failure to waive service; citing *Morales v. SI Diamond Technology, Inc.*, 1999 WL 144469, at *2 (S.D.N.Y. Mar. 17, 1999)). This statement of purpose "strongly suggests the Committee did not intend to curtail application of Rule 4(d)(2) where a defendant was subject to an ultimately unsuccessful claim." *Estate of Darulis v. Garate*, 401 F.3d 1060, 1064 (9th Cir. 2005).

Perhaps recognizing the futility of their "good cause" defense, defendants also challenge the propriety of the attorney's fees sought by plaintiff's motion for recovery of costs. In this regard, Rule 4(d)(2) clearly provides for mandatory imposition of the expenses incurred by plaintiff in making service, as well as reasonable attorney's fees for having to make a motion to collect those expenses, when the defendant fails to waive service without good cause. Rule 4(d)(2)(A), (B). The courts have further clarified, however, that attorney's fees may be imposed "only for the attorney's effort in making a motion to collect the costs of service. The time of the attorney in arranging for formal service after the defendant has refused a waiver is not a compensable item." *Morales*, 1999 WL 144469, at *2 (quoting Fed. R. Civ. P. 4, Supplementary Practice Commentary

C–17); *see also A I Marine Adjusters, Inc. v. M/V SIRI BHUM*, 2007 WL 760415, at *6 (S.D.N.Y. Feb. 8, 2007) (attorney's fees incurred in the process of effecting service cannot be recovered under Rule 4(d)).

Plaintiff's attorney W. Craft Hughes, Esq., has submitted an invoice of itemized services and expenses related to preparation and transmittal of the requests for waivers of service to defendants WCA and Wright, and when the request was refused, arranging for service of process and making the motion for recovery of expenses. *See* Dkt. #18-4. With regard to expenses, plaintiff seeks to recover a total of $559.37 for postage, FedEx, and process server fees. However, this court's review of the invoice reveals that $20.70 of this amount was incurred for postage on the requests for waiver of service, and is therefore not compensable. The remaining $538.67 is compensable as expenses incurred in making service following defendants' refusal to waive without good cause.

Plaintiff also seeks reimbursement for 12.5 hours of attorney time at the rate of $325.00 per hour,[3] for a total of $4,062.50 in attorney's fees for these itemized services. However, this Court's review of the invoice reveals that only 2.75 hours were spent by Mr. Hughes in making the motion to collect the costs of service following defendants' refusal to waive. The remaining 9.75 hours were spent on researching the rules and forms for service and waiver, preparing and transmitting the requests to waive, and arranging for formal service after defendants refused to waive. As discussed above, this is not compensable attorney time under Rule 4(d)(2), and plaintiff is therefore entitled to recover $893.75 in attorney's fees incurred in making the motion to collect service costs.

[3]Defendants do not object to Mr. Hughes' hourly rate.

Accordingly, as a result of having failed to waive service without good cause, it is recommended that defendants be directed to reimburse plaintiff in the amount of $538.67 for expenses incurred in making service, and $893.75 for attorney's fees incurred in making the motion to collect costs, for a total of $1,432.42.

## II. Plaintiff's Motion to Dismiss Defendants' Counterclaim

In ruling on a motion made pursuant to Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted, the court must accept as true the claim's well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See, e.g., Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 2010 WL 1270190, at *2 (E.D.N.Y. Jan. 27, 2010) (citing *Holmes v. Poskanzer*, 342 Fed. Appx. 651, 652 (2d Cir. 2009)). To survive a motion to dismiss under Rule 12(b)(6), the claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In this case, defendants allege in their counterclaim that plaintiff has made false statements of fact and unsubstantiated allegations in the complaint against WCA Hospital and Betsy Wright, subjecting plaintiff to liability for costs, attorney's fees, and damages pursuant to Section 160.008 of the Texas Occupations Code.[4] Dkt. 48, ¶¶ 31-35. Plaintiff

[4] Section 160.008 of the Texas Occupations Code provides, in pertinent part:

> (a) This section applies to a person participating in peer review, a medical peer review committee, or a health care entity named as a defendant in a civil action filed as a result of participation in peer review.
>
> * * *
>
> (c) A defendant subject to this section may file a counterclaim in a pending action or may prove a cause of action in a subsequent action to recover defense costs, including court

contends that this statute is inapplicable because this action arises not as a result of a peer review decision, but rather, as a result of defendants' allegedly false statements to the NPDB about plaintiff's conduct on June 2, 2010. According to plaintiff, this is a tort action for damages based on defamation and interference with business relations, not spawned by the results of official peer review, and not subject to any provisions of the Texas Occupations Code.

However, in answering these claims, defendants have asserted affirmative defenses based on, *inter alia*, the Health Care Quality Improvement Act of 1986 (the "HCQIA"), 42 U.S.C. § 11101 et seq., and analogous provisions of both the Texas Occupations Code (relevant portions also referred to as the Texas Medical Practices Act, or "TMPA") and the New York Public Health Law. *See* Dkt. #48, ¶¶ 19-23. These statutes provide health care entities and their "professional review bod[ies]" with presumptive immunity from civil liability for peer review activity regarding the competence or professional conduct of individual physicians. *See, e.g.*, 42 U.S.C. § 11111(a)(1) (limitation on damages for professional review actions); Tex. Occ. Code § 160.010 (immunity from civil liability for medical peer review activity taken "without malice"); N.Y. Pub. Health Law § 2805-j(2) (immunity from civil damages for medical peer review activity taken "in good faith and without malice"); *cf. Jenkins v. Methodist Hospitals of Dallas, Inc.*, 2004 WL 3393380 (N.D.Tex. Aug. 14, 2004) (analyzing similar claims and defenses under both TMPA and HCQIA), *aff'd*, 478 F.3d 255 (5th Cir.), *cert. denied*, 552 U.S. 825 (2007).

---

> costs, attorney's fees, and damages incurred as a result of the civil action, if the plaintiff's original action is determined to be frivolous or brought in bad faith.

Tex. Occ. Code § 160.008(a), (c).

Indeed, the NPDB itself (*i.e.*, the entity with which the allegedly false and defamatory statements about plaintiff were lodged) was established by the HCQIA to serve as an "information clearinghouse" of confidential adverse information related to the peer review of medical professionals, with the stated purpose of "restrict[ing] the ability of incompetent physicians to move from State to State without disclosure or discovery of the physician's previous damaging or incompetent performance." 42 U.S.C. § 11101(2); *see also* U.S. Dept. of Health & Human Services, *National Practitioner Data Bank Guidebook* A-2 (2001), http://www.npdb-hipdb.hrsa.gov/resources/NPDBGuidebook.pdf ("*NPDB Guidebook*"). As the *Guidebook* explains, "[b]ecause the immunity provided by the *Health Care Quality Improvement Act* is from liability rather than from suit, a disciplined physician … retains the right to sue; however, the court may award attorneys' fees and court costs to the defendants if the suit is determined to be frivolous, unreasonable, without foundation, or in bad faith." *NPDB Guidebook*, at A-2; *see also* 42 U.S.C. § 11113 (mandating award of costs and attorney's fees for "substantially prevailing" defendant "if the claim, or the claimant's conduct during the litigation of the claim, was frivolous, unreasonable, without foundation, or in bad faith."); *Jenkins v. Methodist Hospitals of Dallas, Inc.*, 2009 WL 2776478, at *1 (N.D.Tex. Aug. 31, 2009) (awarding attorney's fees under TMPA and HCQIA for defense of claims against individual defendants involved in plaintiff's peer review which were found to be "unreasonable and without foundation").

In this Court's view, plaintiff's allegations regarding the falsity or defamatory nature of the statements made by defendants to the NPDB necessarily implicate the peer review activity conducted by defendants in investigating the facts surrounding the events of June 2, 2010. Defendants should therefore be allowed to invoke the immunity from civil liability

for that activity as provided by federal and state law, as well as the standards for determining whether to award costs and attorney's fees to defendants should they substantially prevail in the action. Accordingly, the Court finds that defendants have stated a counterclaim for relief that is "plausible on its face …," *Twombly*, 550 U.S. at 570, and respectfully recommends that plaintiff's motion to dismiss be denied.

## CONCLUSION

For the foregoing reasons, it is recommended that defendants' motion (Dkt. #51) to set aside Judge Rosenthal's June 3, 2011 order be denied, and defendants' motion to stay enforcement of that order (Dkt. #52), be likewise denied. As a result of their failure to waive service, it is recommended that defendants be directed to reimburse plaintiff, forthwith, in the amount of $538.67 for expenses incurred in making service, and $893.75 for attorney's fees incurred in making the motion to collect expenses, for a total of $1,432.42.

Also for the foregoing reasons, it is respectfully recommended that the District Court deny plaintiff's motion (Dkt. #54) to dismiss defendants' counterclaim.

Accordingly, pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed. R. Civ. P. 72(b), and Rule 72(b) of the Local Rules of Civil Procedure for the Western District of New York.

The district judge will ordinarily refuse to consider *de novo* arguments, case law


and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Local Rule 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

DATED: Buffalo, New York
November 4, 2011

***s/ H. Kenneth Schroeder, Jr.***
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**