UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARKAT S. HOODA, M.D.,<br><br>    *Plaintiff*,<br><br>V.<br><br>W.C.A. SERVICES CORPORATION d/b/a WCA HOSPITAL, ET AL.,<br><br>    *Defendants*. | WDNY DOCKET NO.  1:11-cv-00504 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT DISMISSING THE PLAINTIFF'S COMPLAINT.**

By:    Stephen A. Manuele, Esq.
FELDMAN KIEFFER, LLP
Attorneys for Defendants, WCA
HOSPITAL and BETSY WRIGHT
The Dun Building, Suite 400
110 Pearl Street
Buffalo, New York 14202
(716) 852-5875
smanuele@feldmankieffer.com

## ISSUE PRESENTED

Whether the Defendants, WCA Hospital and Betsy Wright, are immune from Plaintiff's claims under the Health Care Quality Improvement Act ("HCQIA) when the Defendants commenced a professional review action against the Plaintiff and made an accurate report to the National Practitioners Data Bank ("NPDB").

## STANDARD OF REVIEW

Immunity under the HCQIA is a question of law that may be resolved whenever the record is sufficiency developed. *McLeay v. Bergen Mercy Health Systems Corp.*, 271 Neb 602, 714 N.W.2d 7 (Sup. Ct. Neb 2006). The HCQIA expressly provides that it shall be presumed that the professional review standards have been met, unless the presumption is rebutted by a preponderance of the evidence. 42 U.S.C. §11112(a).

Immunity for reporting exists as a matter of law, unless there is sufficient evidence for a jury to conclude a report to the NPDB was false and the reporting party knew it was false. *Brown v. Presbyterian Healthcare Services,* 101 F.3d 1324 (10th Cir. 1996). On summary judgment, the reporting party has the burden to establish either: 1) the report as true; or 2) if the report was false, when the reporting party completed the report, the reporting party did not know the report was false. *Davis v. Methodist Hospital*, 997 S.W.2d 788 (1st Dist. Houston 1999). *McLeay v. Bergen Mercy Health Systems Corp.*, 271 Neb 602, 614, 714 N.W.2d 7, 22 (Sup. Ct. Neb 2006) (Applying the HCQIA evidentiary presumption to HCQIA false report immunity.)

A court can grant summary judgment at any time after a pleading is served. *See,* F.R.C.P. Rule 56(b), *Aniero Concrete Co. v. New York City Constr. Auth.,* 1997 U.S. Dist. LEXIS 22 (S.D.N.Y. 1997). Rule 56 "does not require trial courts to allow parties to conduct discovery

before entering summary judgment." *United States ex rel. Small Business Admin. v. Light,* 766

F.2d 394, 397 (8th Cir. 1985).

## STATEMENT OF FACTS

Defendants incorporate by reference facts set forth in the Local Rule 56 Statement of

Material Facts and Appendix, and the Attorney Affidavit of Stephen A. Manuele sworn to on

July 2, 2012.

## Point 1

### The Defendants Are Immunity from Plaintiff's Claims
### Under the HCQIA.

A. <u>National Practitioners Data Bank</u>.

Congress enacted the HCQIA to prevent malpractice, to improve the quality of

healthcare, and to ensure that incompetent physicians would be prevented from "mov[ing] from

State to State without disclosure or discovery of the physician's previous damaging or

incompetent performance." 42 U.S.C. §11101(1)-(2).  The HCQIA seeks to promote these goals

through professional peer review, which it accomplishes in part by limiting the civil liability of

the physicians, administrators, and health care entities involved in professional review

actions. *Id*. at §11101 (3)-(5).

The National Practitioner Data Bank ("NPDB") has been set up under the HCQIA to

collect and release certain information relating to the professional competence and conduct of

physicians, dentists and other health care practitioners. *See,* 42 U.S.C.S. § 11101 *et seq.,* 45

C.F.R. § 60.1 (2010).  The NPDB was created to act primarily as an alert or flagging system

intended to facilitate a comprehensive review of the professional credentials of heath care

practitioners, providers and suppliers. The HCQIA regulates what actions are subject to

reporting.

3

Pursuant to 42 U.S.C. § 11133, health care entities are required to make certain reports to the NPDB when they take a professional review action that adversely affects the clinical privileges of a physician.  Specifically, this section provides that a health care entity must report to the Board of Medical Examiners and the Secretary of Health and Human Services incidents when it, "…accepts the surrender of clinical privileges of a physician… (i) while the physician is under an investigation by the entity relating to possible incompetence or improper professional conduct…" 42 U.S.C. §11133(a)(1)(B) and 42 U.S.C. §11134 (b). Failure by a health care entity to make a mandated report to the NPDB will result in sanctions against the entity. *See,* 42 U.S.C. §11133(c)(1). Additionally, New York Public Health Law §2803-e, states that a hospital is required to report a professional's "resignation or withdrawal of association or of privileges with such facility to avoid the imposition of disciplinary measures."

B.  HCQIA Immunity.

The HCQIA has two separate immunity provisions- professional review action immunity (42 U.S.C. §11112) and immunity for reports made to the NPDB (42 U.S.C. §11137).

*1.  Professional Review Action Immunity.*

The immunity provision contained in Section 11111(a)(1) provides that, if certain standards are met, participants in a peer review process that results in a "professional review action" "shall not be liable in damages under any law of the United States or of any State (or political subdivision thereof) with respect to the action." 42 U.S.C. §11111(a)(1).  The term "professional review action"  is defined as,

>…an action or recommendation of a professional review body which is taken or made in the conduct of professional review activity, which is based on the competence or professional conduct of an individual physician (which conduct affects or could affect adversely the health or welfare of a patient or patients), and which affects (or may affect) adversely the clinical privileges, or membership in a professional society, of the physician. Such term includes a formal decision of a professional review body not to take

4

an action or make a recommendation described in the previous sentence and also includes professional review activities relating to a professional review action… 42 U.S.C. §11151(9).

In order for this immunity to attach under the HCQIA, the professional review action must be taken: (1) in the reasonable belief  that the action was in the furtherance of quality health care, (2) after a reasonable effort to obtain the facts of the matter, (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).*Id.* at §11112(a). The requirements of 42 U.S.C. § 11112(a)(1) are satisfied if peer reviewers, with the information available to them at the time of the professional review action, would reasonably have concluded that their action would restrict incompetent behavior or would protect patients. *Bryan v. Homes Regional Med. Ct*., 33 F.3d 1318 (11th Cir. 1994). Section 11112(b) provides that the failure of a review body to meet the enumerated conditions does not, per se, constitute a failure to meet the standards of Section 11112(a)(3). Additionally, compliance with the terms of Section 11112 is not required if the physician voluntarily waives them. *Id. See, Bryant, supra.*

    *2.  NPDB Report Immunity.*

    Section 11137(c) of the statute affords immunity as a matter of law for NPDB reports made by health care entities:

> "No person or entity…… shall be held liable in any civil action with respect to any report made under 42 U.S.C. §§11131 *et seq…* without knowledge of the falsity of the information contained in the report."

Civil action immunity Section 11137(c) extends to state tort claims where damages claimed are solely the result of a report to the NPDB. *See, Lee v. Hosp. Auth. Of Colouitt Co.*, 353 F.Supp.2d 1255 (U.S. Ga 2004).

C.   Defendants Are Immune from Suit Under the HCQIA As a Matter of Law.

*1.   NPDB Report Immunity.*

Plaintiff's four (4) civil claims pled in his Complaint arise solely from the August 26, 2010 NPDB Report. The Defendants only need prove that the report was not false or Defendants did not know the report was false.  The record on this motion proves that the NPDB Report made by Defendants was true and accurate.

*a.   Dr. Hooda's Resignation from STP.*

Dr. Hooda sent an email on May 3, 2010 to President/CEO (Betsy Wright) and VPMA/Medical Director (Dr. Marlene Garone) informing them that he was resigning his current position as General Pediatrician at Southern Tier Pediatrics.  Dr. Hooda writes, "I will continue my contractually mandated duties for STP including Level 1 Neonatology care at WCA Hospital during the notice period."  In an email exchange with Dr. Garone, Dr. Hooda writes he would be with Southern Tier Pediatrics for the next "3 months or so" and that Dr. Hooda also writes that his "final date of departure would be mutually decided."  On May 11, 2010, Plaintiff submitted a Formal Resignation letter to Dr. Garone. It stated, in part: "As per mutual understanding reached yesterday, my last day of work is anticipated to be June 30, 2010."

*b.   Incident of June 2, 2010.*

While acting as the on-call physician on June 2, 2010, Dr. Hooda was contacted to attend a delivery of a baby of 22 week gestation.  Dr. Hooda initially refused to attend the delivery, but eventually came to the Hospital. The critically ill infant did not survive delivery.  Plaintiff also

included a progress note in the patient's chart which was criticized as inaccurate.  As a result of this conduct, the case was revised a request was made that a quality review be completed.

<em>c.   OG/GYN Care Evaluation Committee Minutes of June 7, 2010.</em>

According to the WCA Bylaws, Rules and Regulations of the Medical/ Dental Staff dated December 19, 2009, Corrective Action may be requested whenever the activities of professional conduct of a practitioner with clinical privileges is considered to be: 1) lower than the standard or aims of the Medical Staff, or 2) conflicts with the rules and regulations of the Medical Staff, or 3) interferes with the operation of the Hospital. Article VIII, A (1)-(3). Rules and Regulation for WCA Hospital Sec. F. 1. provides that it is the expectation that all practitioners conduct themselves in a professional and cooperative manner.  The term "Unprofessional Conduct" is defined to include, "Refusing to accept clinical duties in the Medical//Dental Staff Bylaws, Rules & Regulations and Department Policy Books" and "inappropriate comments (or illustrations) made in patient medical records or other official documents."  The Rules further state that "Appropriate reports will be made to the National Practitioner Data Bank and any agency as required by law."

On June 7, 2010, the WCA Hospital's OB/GYN Care Evaluation Committee met to review the events and documentation of June 2, 2010.  The Minutes state:

> A perinatologist at CHOB [Children's Hospital of Buffalo] was contacted and declined transfer because the fetus was considered to be non-viable until 23 weeks gestation.   The on-call physician [Plaintiff] was called but did not respond immediately.  Therefore, a second pediatrician [Dr. Khan] was called. Both were present for the delivery. The conclusion:  The progress note in question was factually incorrect.  CHOB was contacted when the patient was admitted and declined to accept the transfer.  Although Dr. Hooda eventually arrived, Dr. Khan performed CPR and attended to the baby and the family. Action:  VPMA/Medical Director was requested to contact Dr. Hooda to request a correction to the progress note.  The Department of Pediatrics will review the response by the on-call physician.

### d.  WCA's Quality Review Investigation.

In response to the direction of the OB/GYN Care Evaluation Committee, Dr. Marlene Garone, VPMA/Medical Director, attempted to contact the Plaintiff at his office at STP. Her call was not returned. Phone records indicate that additional calls were made to Plaintiff's office on June 8, 2010.

On June 11, 2010, Dr. Hooda sent an email to Carol Gallagher, WCA's Credentialing Specialist, which effectively surrendered his privileges as of June 13, 2010, stating, "The family has insufficient space in the temporary accommodation in the motel where we are staying since May 31, 2010. Kindly close my hospital file effective midnight of Sunday, June 13, 2010."

After becoming aware of Plaintiff's June 11, 2010 acceleration of his resignation of privileges, Defendant Wright immediately contacted Dr. Hooda by phone at 2:45 on June 11, 2010. Ms. Wright informed Dr. Hooda that a quality review was in process and that the VPMA had been attempting to reach him and that he should not leave town without completing the quality review. He was requested to meet with the VPMA/Medical Director prior to leaving Jamestown. Dr. Hooda agreed to meet with VPMA/Medical Director on June 14, 2010 at 1:30 PM. Plaintiff did not keep the June 14, 2010 appointment with Dr. Garone.

### e.  Pediatric Care Evaluation Committee Minutes

According to the June 30, 2010 Quality Improvement Review Form, the case was reviewed on June 30, 2010 at the Pediatric Care Evaluation Committee. The Request for Quality Review of Dr. Hooda's refusal to respond was completed by the Chairperson of Pediatrics on July 6, 2010. Quality improvement review determined that Dr. Hooda's documentation was not appropriate and that Dr. Hooda's refusal to respond was not appropriate. The review requested that a correction of Dr. Hooda's documentation be done as well as a letter of reprimand be given

to Dr. Hooda.  It was also requested that the VPMA/Medical Director have a discussion with Dr. Hooda regarding his delay in response. The Quality improvement review found that, "Transfer of patient in labor not safe; OB communicated with Buffalo deemed mother to stay at WCA".

Pediatric Care Evaluation Committee met on July 13, 2012 and discussed the Quality Review.  It was determined that since Dr Hooda was informed at the time of his appointment to WCA that there was a potential for this type of delivery at WCA and because of his initial refusal and subsequent delay in attending a high risk delivery, the standards of care and expectations of the Medical Staff of WCA were not met:

> The physician initially responded that the patient should be transferred to a tertiary center for delivery.  The situation was again explained that Women's and Children's Hospital of Buffalo had previously been contacted regarding this pending delivery and that, per protocol, pregnant patients of 22.2 weeks gestation are not transferred to deliver. Physician 1762 [Plaintiff] directed the OB Coordinator to contact his practice partner (Physician 258) to attend the delivery.  Physician 258 [Dr. Kahn] was contacted and indicated the he would come into the hospital and directed the OB Coordinator to call Physician 1762 back to advise him that his response could be perceived as abandonment. Physician 1762 was called and the message left on his voicemail when he did not answer his telephone.  Approximately 3-4 minutes later, the OB Coordinator placed a third call to physician 1762.  He was very upset regarding the message that had been left.  Multiple attempts to contact Physician 1762 have been made to request that he attend the medical record to reflect that his comments regarding maternal care were not accurate.  He has not responded and did not attend an appointment scheduled for him to meet with the Medical Director about this case.  He had previously submitted a letter of resignation effective 6/30/10, however, he left in the middle of the month.   Arrangements were made to cover his pediatric back up assignment.

According to the Pediatric Care Evaluation Committee minutes, since Dr. Hooda did not meet with the VPMA/Medical Director as he initially agreed on June 14, 2010, the Department of Pediatrics supported Administrations review and requirement to report these events to the New York State Office of Professional Medical Conduct (OPMC). The action requested was a letter of reprimand to be sent to the Physician.  Minutes show that several attempts were made to contact Dr. Hooda requesting information on his forwarding address and phone number prior to

his leaving Jamestown.  Information was not forthcoming.  Attempts to receive that information

from Southern Tier Pediatrics were also unsuccessful in that Dr. Hooda did not leave the

forwarding information for his practice as well.

According to the Pediatric Care Evaluation Committee Minutes of September 14, 2010, a

notation was made concerning Plaintiff:

> In an additional attempt to notify Physician 1044 [Plaintiff] of the consequences of his
> action, i.e., leaving during the process of quality of care review and the requirement that
> the Hospital to report it to the OPMC, a certified letter was sent to his forwarding address
> but it was returned as refused. The physician had been advised verbally by the CEO to
> not leave while the review was taking place. The hospital is obligated to report this to the
> OPMC. This will be reported to Credentials Medical Executive Committee, and the
> Board.

On July 22, 2010 a Certified Letter sent to Dr. Hooda from Betsy Wright at Plaintiff's

last known Texas address informing him that a report to the Office of Professional Medical

Conduct would be made due to his failure to complete a quality review as requested by the

President/CEO and VPMA/Medical Director. The letter states:

> I informed you of this investigation and requested that you meet with Marlene Garone,
> MD, VPMA/Medical Director prior to leaving Jamestown.  You stated that you
> understood this request and agreed to the appointment on Monday, June 14, 2010 at 1:30
> p.m. to meet with her.
>
> Multiple attempts have been unsuccessfully made to locate a forwarding phone number to
> speak with you directly regarding the next step in this investigation.
>
> I am writing to inform you that your failure to present for that appointment is consistent
> with the New York State definition of professional misconduct as defined by Public
> Health Law, Article 28, and Hospitals.  Therefore, WCA Hospital will be reporting this
> incident to the New York State Office of Professional Misconduct (OPMC) as required
> by state law and they will determine if further investigation is warranted.

WCA received the letter back on August 4, 2010 with the sticker from the US Post Office stating

the letter was "Refused".  Per the envelope, the first attempt to deliver the letter was on July 28,

2010.

10

Additionally, a letter was sent from Pediatric Department Chairman, Dr. Vicki Campion, to Dr. Hooda. The letter from Dr. Campion to Dr. Hooda stated the case was reviewed and that, "you did not meet the standard of care of this department in your refusal to attend the delivery for which you were the responsible pediatrician".

The August 26, 2010 NPDB report states that the basis for adverse action was "inappropriate refusal to treat."  The classification code for the report was "voluntary surrender of clinical privileges, while under, or to avoid, investigation relating to professional competence of conduct." The description of the subject's actions was reported as, "Physician refused to attend a delivery for a critically ill infant when he was the responsible physician on call. Physician resigned his medical staff privileged and left the area while under investigation for his failure to respond as required." On August 26, 2010, WCA informed the New York State Office of Professions of its adverse action report filed with the NPDB. The accuracy of the Hospital's report was upheld by the Federal Department of Health and Human Services. The New York State Department of Health also reviewed this matter and determined that "everyone interviewed by this Office supported the claim that it was not your intention to be present for the delivery… on June 2, 2010".

*f.   The HCQIA Administrative Dispute Process.*

A subject may seek a review of a NPDB report by the Federal Secretary of Health and Human Services.  42 U.S.C. §11136(2). A physician who disputes the accuracy of a report can seek Secretarial review, which is limited to having the report reviewed for accuracy of factual information and to ensure that the information was required to be reported. 45 C.F.R. § 60.16(c)(2) (2012).  Under the regulations for the HCQIA, when a physician seeks Secretarial

review of a report the Secretary of Health & Human Services reviews the written information submitted by both parties. *Id.*

Any physician, dentist, or other health care practitioner or health care entity may dispute the accuracy of information in the NPDB concerning himself, herself or itself.  42 C.F.R. § 60.16 (2012). According to Section 60.16 of the HCQIA regulations, a subject of a report may dispute the accuracy of a report within sixty (60) days from when the Secretary mails the report to the subject.  The regulations provide that to dispute a report, the subject must: (1) Inform the Secretary of Health and Human Services and the reporting entity, in writing, of the disagreement, and the basis for it, (2) Requesting simultaneously that the disputed information be entered into a "disputed" status and be reported to inquirers as being in a "disputed" status, and (3) Attempt to enter into discussion with the reporting entity to resolve the dispute. 42 C.F.R § 60.16 (b)(1)-(3) (2012). Before the DHHS can take action on a report, the subject must request that the reporting entity withdraw or modify a NPDB report.

If the reporting entity refuses to void or modify a report, the Secretary will, upon request, review the written information submitted by both parties. 42. C.F.R. §60.16(c)(2). After review, the Secretary will either: 1) conclude that the NPDB information is accurate and include a brief statement by the physician, dentist or other health care practitioner or health care entity describing the disagreement concerning the information, and an explanation of the basis for the decision that it is accurate, or 2) conclude that the information in the report is incorrect and send corrected information to previous inquirers. 42 C.F.R. §60.16(c)(2)(i)-(ii).  The decision by the DHHS on the accuracy of a NPDB report is a final agency action subject to judicial review.  *See, Suleman v. Shinseki*, 2011 U.S. Dist.LEXIS 52280 (E.D. NC 2011) *and Leal v. DHHS*, 620 F.3d 1280 (11th Cir. 2010).

g.    *November 7, 2011 Secretarial Review Decision.*

In or about April 2011, Plaintiff contacted the Secretary of the Department of Health and

Human Services ("DHHS") requesting an explanation of the events leading to the August 26,

2010 report made by WCA and copies of documents corroborating WCA's explanation. With

that submission, Plaintiff included the correspondences with UTMB and the OPMC, and

excerpts of the Affidavits from Dr. Khan and Dr. Daniels. In his Challenge to the DHHS,

Plaintiff contends that the Report was not a factually accurate reflection of the actions taken by

WCA and the reasons for the actions taken.  Plaintiff specifically contends that he was never

notified in writing by WCA or South Town Pediatrics ("STP") of any hospital investigation

against him. Plaintiff also raised concerns regarding the delay in filing the Report and challenges

the finding that he did not attend the June 2, 2010 delivery.

On August 11, 2011, WCA provided a response to the DHHS's request for an

explanation with a copy to Plaintiff's counsel. Enclosed with that response were various

documents from the Plaintiff's Quality Review file, as well as an affidavit of a witness from the

events on June 2, 2010.

On November 7, 2011, the DHHS issued a Secretarial Review Decision.  The DHHS

denied the Plaintiffs' dispute. The Secretary's decision states:

> "WCA's August 11, 2011 letter to us clearly shows that you were under investigation
> when you resigned your privileges and moved to Texas. To recap briefly, you informed
> WCA on June 11, 2010 of your intent to move to Texas that weekend. WCA's CEO then
> informed you, on the same day, of an in-process quality review concerning your June 2,
> 2010 delayed on-call response. The CEO suggested that you not leave town without
> completing the review. You then agreed to meet with the Medical Director on June 14,
> 2010 but did not keep your appointment. Later, on July 13, 2010, the WCA Pediatric
> Care Evaluation Committee determined that your initial refusal and subsequent delay in
> attending a June 2, 2010 high risk delivery did not meet the standards of care and
> expectations of the WCA Medical Staff. You were informed of the Pediatric Care
> Evaluation Committee's July 13, 2010 determination by letter dated July 22, 2010. **These
> events clearly show that you were under investigation at WCA at the time you**

13

**surrendered your privileges and moved to Texas in June 2010. As such, WCA was legally required to report your voluntary surrender of privileges while under investigation to the NPDB.**" [Emphasis added.]

The Secretary did not find any merit in Plaintiff's arguments challenging the timing of the report or the fact he claims he never received notice of the investigation.  According to the Secretary, when Plaintiff moved to Texas, he was under investigation by WCA and that voluntary surrenders while under investigation are reportable. Furthermore, the Secretary found that the Plaintiff's presence or absence in the delivery room on June 2, 2010 has no bearing on the fact that a voluntary surrender while under investigation is reportable to the NPDB.

The Secretarial Review Decision concludes that, **"Based on the information in the record, we have determined that the Report is factually accurate as a reflection of the reasons WCA took action and the action taken."** [Emphasis added.]

> h.      *Admissibility of Agency Decision.*

F.R.E. 803(8)(C) provides that records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth in civil actions and proceedings and against the government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate the lack of trustworthiness are not excluded by the hearsay rule, even though the declarant is available as a witness. *See, Casey v. Philadelphia Electric Company*, 1987 U.S.Dist.LEXIS 2799 (U.S. Dist. E.D. Pa 1987).

Nearly all of the exceptions to the hearsay rule in Fed. R. Evid. 803 represent types of hearsay evidence that judicial experience reveals have sufficient reliability to justify consideration by the trier of fact with or without the presence of the declarant and regardless of whether the declarant is absent, that absence can be explained. *Yankee Atomic Energy Company*

*v. United States*, 2004 U.S. Claims LEXIS 363 (U.S. Court of Federal Claims 2004).  Under the Fed. R. Evid. 803(8)(A) exception to the hearsay rule, it is not necessary that a government agency have firsthand knowledge of all matters contained in the records as long as the agency has firsthand knowledge of the investigation. Rule 803(8)(A) does not require the document be kept in the course of a regularly conducted activity. Personal knowledge is satisfied if a colleague or subordinate has knowledge.  *Id.*

Admissibility of public records is presumed, and the burden of proof is on the party opposing introduction. The burden shifts to the opponent of such evidence demonstrating lack of trustworthiness once it is established that the evidence is in fact a public record. *Yankee Atomic Energy Company, supra, and Austin Carias-Reyes, Et al v. Lee, et al.*, *infra.*  Rule 803(8)(C) does not preclude the introduction of opinions and conclusions in public reports so long as two criteria are met. First, all statements in such a report must be based on factual investigation. Second, any portion of the report that is admitted must be sufficiently trustworthy. *See, In re Nautilus Motor Tanker Co., Ltd.,* 85 F.3d 105 (3rd Cir. 1996) *and Austin Carias-Reyes, Et al v. Lee, et al.,* 1996 U.S. Dist lexis 5042 (U.S. Dist. E.D. La). Federal courts have held, for example, the following as admissible under F.R.E. 803(8): 1) reports generated by Department of Energy contractors (*Yankee Atomic Energy Company, supra*),   2) remedial investigation report, authorized under CERCLA, 42 U.S.C. 9604(b) (*United States v. Davis*, 826 F.Supp. 617 (U.S. Dist RI 1993); 3) coroner's report (*Austin Carias-Reyes*); and 4) traffic accident report authorized under state law (*Reagan et al v. Duna-Way Timber Company*, 2011 U.S. Dist. LEXIS 79240 (U.S. Dist. W.D. Arkansas 2011).

The Secretarial Review Decision of Plaintiff's dispute is presumed admissible as proof of the accuracy of the NPDB Report. The documents submitted to the NPDB by WCA included

business and quality review records, correspondences, party statements, and a witness Affidavit. These documents would be admissible under the business record exception, admissions or statements of a party, and are inherently trustworthy. The administrative challenge was not a one-sided exchange. Plaintiff submitted documents in support of his challenge to the NPDB report as well. Thus, the factual findings made by the Secretary, namely that WCA's NPDB report was accurate and the actions taken against the Plaintiff were accurately stated in the report, were made by a skilled and objective civil servant upon consideration of trustworthy and reliable information.

Based on the foregoing, the Defendants are entitled to false report immunity under Section 11137(c) of the HCQIA. *McLeay v. Bergen Mercy Health Systems Corp.*, 271 Neb 602, 614, 714 N.W.2d 7, 22 (Sup. Ct. Neb 2006) (A defamation action seeking damages is subject to HCQIA immunity.) *See, Payne v. Harris Methodist, et al.,* 2001 U.S. Dist. LEXIS 815, (D.N.Tx. 2001) (Finding immunity under Section 11137(c) for NPDB report on defamation claim.)  The present case is similar to the *Lee v. Hosp. Auth. Of Colouitt Co., supra,* case. In *Lee,* the undisputed evidence demonstrated that the plaintiff had notice of a quality review investigation. Plaintiff in *Lee*, like Dr. Hooda here, did not participate in the investigation and resigned his staff privileges while an investigation was pending.  The federal district court granted summary judgment dismissing plaintiff's claims since immunity under Section 11137(c) applied. *See, Curtsinder v. HCA*, 2007 Tenn. App. LEXIS 268 (Court of Appeals 2007) (Plaintiff failed to rebut the presumption of immunity under Section 11137 due to lack of evidence of falsity).

The same conclusion in *Lee* should be reached here. Since reporting immunity applies, all state law claims alleged in the Complaint should be dismissed.

2.   *Professional Review Action Immunity Applies.*

Even though Defendants are entitled to immunity as a matter of law under Section 11137(c), Defendants would be entitled to professional review action immunity under Section 11112 of the HCQIA.

The real issue on immunity is the sufficiency of the basis for a defendant's actions. *See, Austin v. McNamara,* 979 F.2d 728 (9th Cir. 1992). Defendants acted in reasonable belief that its actions were in furtherance of quality health care. The Hospital's OB/GYN Care Evaluation Committee Meeting and the Pediatric Care Evaluation Committee both found issues with Plaintiff's conduct on June 2, 2010. The OB/GYN Committee found that the Plaintiff's chart note of June 2, 2010 was factually inaccurate. The Pediatric Care Committee also found that Plaintiff's chart note was inaccurate, and that there was an initial refusal and subsequent delay in attending a high risk delivery by Plaintiff, and that those actions did not meet the standard of care or the expectations of the Medical Staff at WCA Hospital.

A reasonable effort was made to obtain the facts. The OB/GYN Committee directed an investigation into the inappropriate progress note by the Plaintiff. After effort was taken to meet with the Plaintiff, he left town in advance of his resignation date, thereby foreclosing an interview with him. Since Plaintiff frustrated the Hospital's peer review investigation by his departure, the Hospital concluded its investigation at that time and made a decision on reporting to the NPDB and the OPMC. Under the HCQIA, an investigation terminates when the health care entity takes final action or formally closes its probe. *Doe v. Leavitt, et al.,* 552 F.3d 75 (1st Cir. 2009).

Since he surrendered his license during the investigation, Plaintiff, through his own actions, did not have a hearing on the charges raised in the peer review process. The HCQIA explicitly states that compliance with its terms is not required if the physician voluntarily waives

them. 42 U.S.C. § 11112(b). Here, Plaintiff waived an investigation and hearing by virtue of the acceleration of his resignation date, refusing to respond to phone calls from WCA, and failing to appear at a scheduled meeting to discuss this matter with WCA.

There is no question that the Defendants had a reasonable belief that action was warranted based upon the investigation conducted before Plaintiff's surrender of his license. *See,* 42 U.S.C. §11112(a).  The action was a report to the NPDB and the OPMC. As discussed herein, the Defendants were legally required to make a report to the NPDB of surrender of privileges under 42 U.S.C. § 11133.  Accordingly, professional review action immunity applies to Defendants , serving as a separate and independent basis to dismiss the Plaintiff's Complaint.

   D.  Plaintiffs Cannot Rebut the Presumption of Immunity.

To rebut  a presumption of reasonableness in the fact finding efforts of the peer review action, a plaintiff must point to specific and material facts demonstrating that the fact finding efforts were unreasonable. *Summers v. Ardent Health*, 257 P.3d 943 (N.M. 2011). Without any evidence of a connection between a professional review action and its allegedly illegitimate basis, the courts cannot presume that one exits. *See, e.g., Chalal v. Nw. Med. Ctr.,* 147 F.Supp.2d 1160,1172 (N.D. Ala. 2000).

Plaintiff asserts in the Complaint and his Answer to Interrogatories three general theories in support of his claim: 1) that the report was incorrect because he eventually did arrive at the Hospital and attended the patient, 2) that in his clinical judgment he disagreed with how Defendants provided  medical services; and 3) that Defendants acted in bad faith by making the NPDB report about him because he exposed, what Plaintiff felt, were clinical deficiencies at the Hospital.  Plaintiff's contentions as against WCA are immaterial and irrelevant to the immunity

defense asserted, and even if they are true, would not overcome the presumption of immunity under the HCQIA.

1. *Plaintiff's Attendance on June 2, 2012.*

Plaintiff contends that he did arrive at the deceased infant's delivery on June 2, 2010, and thus the report is inaccurate.  The Hospital does not contend that Plaintiff never arrived at the delivery, but that his initial *refusal* was inappropriate and not in compliance with the standard of care expected by the Hospital.  In fact, the Plaintiff does not deny he initially refused to attend the delivery. Even if a physician shows that his peer reviewers reached an incorrect conclusion, such does not overcome the presumption of correctness of the peer reviewer's disciplinary action. *Imperial, supra,* 37 F.3d at 1030, *Brader v. Alleghany General Hospital,* 167 F.3d 832 (3rd Cir 1999).

2. *Plaintiff's Clinical Opinion of Deficiencies.*

Plaintiff exerts significant effort criticizing WCA's medical practice as a reason why he acted the way he did on June 2, 2010.  However, the courts have held that conflicting expert testimony as to the care rendered by a physician does not call into question a peer review decision. *Mathews v. Lancaster General Hosp.*, 87 F.3d 625, 636 (3rd Cir. 1996).  Even if a physician proves that his patient care met the standard of care, such does not overcome the presumption of the correctness of the peer reviewer's disciplinary action. *Lee v. Trinity Lutheran Hospital*, 408 F.3d 1064 (8th Cir. 2004), *Brader, supra,* 167 F.3d at 832, *and McLeay v. Bergan Mercy Health Sys Corp.*, 714 N.W.2d 7 (Neb. 2006). Furthermore, HCQIA does not require that the professional review action result in an actual improvement of quality healthcare, only that the peer reviewers reasonably believed it did. *Imperial v. Suburban Hosp. Ass'n, Inc.*, 37 F.3d 1026, 1030 (4th Cir 1994).  Plaintiff's diatribes as to clinical deficiencies are inapposite here.

3. *Defendant's Alleged Bad Faith*

Plaintiff alleges, essentially, that the Hospital was out to "get him" or ruin his career because he exposed clinical deficiencies that undermine a pecuniary interest. This argument is unavailing. In the HCQIA immunity contest, the subjective bias or bad faith motives of the peer reviewers is irrelevant. *Lee v. Trinity Lutheran Hospital,* 408 F.3d 1064 (8th Cir. 2005) *and Poliner v. Tex. Health Sys.,* 537 F.3d 368 (5th Cir. 2008). Courts use an objective standard of reasonableness when considering whether defendant has met the statutory requirements of the Health Care Quality Improvement Act of 1986, 42 U.S.C.S. § 11101-11152 (HCQIA). *Egan v. Athol Mem. Hosp.,* 971 F. Supp. 37 (D. Mass. 1997). Defendant's hostility is also irrelevant. *Id.* Likewise, Plaintiff's contention that Defendants' conduct was ultimately motivated by pecuniary interests is likewise immaterial. *For example*, *Georgopolous v. Humility of Mary Health Partners, Inc.*, 958 N.E.2d 1268 (Court of Appeals OH 2011) (Plaintiff's allegation that professional review process was motivated by a desire to attract more patients was immaterial.) It is evident that Defendants had a reasonable basis to conduct a peer review investigation based upon a genuine motivation to improve quality care. Even if Plaintiff can point to a deficiency in the Hospital's peer review process, an investigation need only be conducted in a "sensible fashion"; it need not be flawless. *See, Manzetti v. Mercy Hospital of Pittsburgh*, 776 A.2d 938 (2001).

While it is clear in the record that the Plaintiff had notice that an investigation was being conducted, even if he never received formal notice that does not rebut a presumption of immunity.

The NPDB Guidebook, which is published by the federal DHHS Health Resource and Service Administration, notes in a dispute example, that actual knowledge of a pending peer review investigation is irrelevant:

> **Privileges - Resignation and Surrender While Under Investigation**
>
> **Example:** A practitioner disputed a report that he had resigned privileges during an investigation concerning professional competence. The practitioner disputed the report on the basis that he was unaware of any investigation and did not believe one was ongoing at the time. The practitioner also stated that he did not resign in order to avoid a review, but because his contract was expiring and he had found a new job.
>
> **Secretary's Response:** The Secretary requested that the entity submit contemporaneous documentation showing that the entity had undertaken an investigation of the physician. Such documentation might have included findings of reviewers or directives of the executive committee or other professional review bodies in the hospital, or minutes from a professional review entity. The entity was unable or unwilling to provide any documentation that an investigation was occurring at the time the practitioner left. Since no contemporaneous documentation of an ongoing investigation was provided, the Secretary determined that the report should be voided.
>
> **The Secretary also stated that the practitioner need not be aware of an ongoing investigation at the time of the resignation in order for the entity to report the resignation to the NPDB, since many investigations start without any formal allegation being made against the practitioner. The reason the practitioner gives for leaving an entity while under investigation is irrelevant to reportability of the resignation.**

NPDB Guidebook, pg. F-8 (2001).  Unlike the example cited above, WCA provided substantial documentation and a written explanation in response to Plaintiff's challenge.

Based upon the foregoing, the only conclusion is the presumption of immunity applies to WCA and any efforts by the Plaintiff to rebut that presumption would be ineffective.  Thus, the only conclusion is dismissal.

## Point 2.

### Plaintiff's Demand for a Preliminary Injunction Relief Should Be Dismissed.

In the Complaint, Plaintiff requests a preliminary junction, alleging that he will suffer irreparable harm if WCA is not enjoined while the suit is pending "from allowing a false report to remain on file with the NPDB." Complaint, Paragraph 198.

The Supreme Court has cautioned that a "preliminary injunction is an extraordinary and drastic remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365 (2008). Normally, a plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *See, Winter*, 129 S.Ct. at 374.

Neither the HCQIA nor its regulations contain a private right of action for the subject of the report. Plaintiff availed himself of the administrative remedies under the statute, namely a Secretarial Review, which have been exhausted. *See, Brown v. Medical College of Ohio*, 79 F.Supp.2d 840 (N.D. OH 1999). That review was denied by the DHHS and a decision rendered in favor of the Defendant, WCA Hospital.

Neither does equity favor a preliminary injunction on behalf of the Plaintiff here, nor is it in the public's interest. According to the District Court in *Brown*, *supra*,

> There is no evidence in either the text or the legislative history of the HCQIA that physicians are a class for whose especial benefit the Act was passed. To the contrary, the HCQIA's text and legislative history indicate that it was passed to benefit *patients* by improving the quality of health care and reducing the number of incompetent physicians, and, in addition, to benefit peer review committees by providing immunity from suit so long as they abide by its procedures. *Brown,* 79 F.Supp.2d at 845

The legislative intent of the HCQIA was designed to protect the public and not doctors. Part of the design of the statute's intent was that health care entities are legally mandated to make reports, such like in this case, in order to inform other health care providers and entities of

potential issues with a report's subject.  This ultimately protects the public, as consumers of

health care products, from potential substandard care. Since Defendants had a legal obligation to

make the report subject to this lawsuit, which was upheld by the DHHS as factually accurate,

Defendants have no ability the remove that report from the NPDB. There is no action that can be

compelled by an injunction.

Furthermore, the Plaintiff has taken no action to enforce the preliminary injunction it

demands in his Complaint since the case's inception in December 2010.  Plaintiff's inactivity on

this claim renders it abandoned. *See, Menon v. Stouder Memorial Health, et al.*, 1997 Ohio App.

LEXIS 567 (Court of Appeal OH 1997).

Accordingly, Plaintiff's claim for a preliminary injunction should be dismissed.


## Point 3.

### Defendants Are Entitled to Relief Against the Plaintiff.

The HCQIA provides for the payment of reasonable attorneys' fees and costs in defense

of suit:

> In any suit brought against a defendant, to the extent that a defendant has met the
> standards set forth under [42 USCS § 11112(a)] and the defendant substantially prevails,
> the court shall, at the conclusion of the action, award to a substantially prevailing party
> defending against any such claim the cost of the suit attributable to such claim, including
> a reasonable attorney's fee, if the claim, or the claimant's conduct during the litigation of
> the claim, was frivolous, unreasonable, without foundation, or in bad faith. For the
> purposes of this section, a defendant shall not be considered to have substantially
> prevailed when the plaintiff obtains an award for damages or permanent injunctive or
> declaratory relief.  42 U.S.C. §11113.

Defendants also plead in their Answer to the Complaint a Counter Claim under Texas Law that is

substantially similar in affect to Section 11113 of the HCQIA. Texas Occupations Code

Annotated §160.008 provides, in pertinent part:

(c) A defendant subject to this section may file a counterclaim in a pending action or may prove a cause of action in a subsequent action to recover defense costs, including court costs, attorney's fees, and damages incurred as a result of the civil action, if the plaintiff's original action is determined to be frivolous or brought in bad faith.

In the event that Defendants prevail on summary judgment, they are entitled to relief on their counterclaim. Plaintiff's action in bringing this lawsuit have been unreasonable and an attempt to force WCA Hospital, a rural hospital in a medically underserved area, and Betsy Wright personally, to remove a report mandated by federal law. Instead of contacting WCA Hospital to resolve this dispute at the onset, the first thing the Plaintiff did in December 2010 was to file a lawsuit in Texas. No attempts were made by Plaintiff to contact Defendants to see if resolution was possible before commencing suit. Likewise, Plaintiff did not exhaust administrative remedies provided under the HCQIA statute before commencing the lawsuit. *Bingman v. MLMIC,* 1996 U.S.Dist.LEXIS 1949 (S.D.N.Y. 1996). (The administrative remedied procedure set forth in 45 C.F.R. 60.14 must be completed before a civil suit against the reporting entity is commenced.) *Also see, Brown v. Med. Coll. of Ohio,* 79 F. Supp. 2d 840, 845 (N.D. Ohio 1999) ("Allowing a physician to bypass the administrative procedure simply by choosing to sue the reporting entity could 'induce frequent and deliberative flouting of administrative processes, thereby undermining the scheme of decision making that Congress has created' under the HCQIA.") Instead, an attempt to "enter into discussion with the reporting entity to resolve the dispute" and exhaustion of Plaintiff's administrative remedies were done during the pendency of the litigation.

Based upon this conduct, Plaintiff's actions are unreasonable and Defendants are entitled to attorney fees as provide under Section 11113 of the HCQIA and Texas Occupations Code Annotated §160.008.

24

<u>CONCLUSION</u>

The Defendants complied with their mandated reporting requirement. Thus, they are entitled to immunity protection as a matter of law. Nothing plaintiff can offer can rebut this presumption of immunity. Accordingly, Plaintiff's Complaint should be dismissed. Additionally, since Plaintiff acted unreasonably in bringing this lawsuit, Defendants are entitled to a judgment on their counter claim and the award of attorney fees against the Plaintiff.

Dated:  July 2, 2012
       Buffalo, New York

                         Respectfully submitted by:


                         /s/Stephan A. Manuele
                         Stephen A. Manuele, Esq.
                         FELDMAN KIEFFER, LLP
                         Attorneys for Defendants, WCA
                         HOSPITAL and BETSY WRIGHT
                         The Dun Building, Suite 400
                         110 Pearl Street
                         Buffalo, New York 14202
                         (716) 852-5875
                         smanuele@feldmankieffer.com