UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARKAT S. HOODA, M.D.,<br><br>    *Plaintiff*,<br><br>V.<br><br>W.C.A. SERVICES CORPORATION d/b/a WCA HOSPITAL, ET AL.,<br><br>    *Defendants*. | WDNY DOCKET NO.  1:11-cv-00504<br><br>**STATEMENT OF MATERIAL FACT (LOCAL RULE 56)** |

Defendants, WCA HOSPITAL and BETSY WRIGHT, state the following are material facts not in dispute:

1. According to the WCA Bylaws, Rules and Regulations of the Medical/ Dental Staff dated December 19, 2009, Corrective Action may be requested whenever the activities of professional conduct of a practitioner with clinical privileges is considered to be: 1) lower than the standard or aims of the Medical Staff, or 2) conflicts with the rules and regulations of the Medical Staff, or 3) interferes with the operation of the Hospital. *Appendix No. A., pg. 14.*

2. Rules and Regulation for WCA Hospital Sec. F. 1. provide that it is the expectation that all practitioners conduct themselves in a professional and cooperative manner. *Id., pg. 40.*

3. The term "Unprofessional Conduct" is defined to include, "Refusing to accept clinical duties in the Medical/Dental Staff Bylaws, Rules & Regulations and Department Policy Books" and "inappropriate comments (or illustrations) made in patient medical records or other official documents." *Id., pg. 41.*

4. In 2010, Dr. Barkat Hooda was a physician licensed to practice medicine in New York State.

5. In 2010, Dr. Barkat Hooda was employed by Southern Tier Pediatrics as a General Pediatrician.

6. Dr. Hooda was granted clinical staff privileges at WCA Hospital in Jamestown, New York.

7. On May 3, 2010, Dr. Hooda advised Ms. Wright and the WCA Hospital Medical Director, Dr. Marlene Garone, by email, of his resignation from his position as General Pediatrician at Southern Tier Pediatricians ("STP"). *Appendix No. B.*

8. The May 3, 2010 email states that Dr. Hooda, "will continue my contractually mandated duties for STP including level 1 neonatology care at WCA during the notice period." *Appendix No. B.*

9. On May 3, 2010, Dr. Kahn, as Dr. Hooda's supervising physician at Southern Tier Pediatrics, sent a letter to Dr. Hooda, confirming that his duties at WCA Hospital would continue until Dr. Hooda's employment is completely terminated. *Appendix No. C.*

10. The May 3 2010 letter states that, "based on hospital, department of pediatrics and practice protocol, part of having an active staff assignment with the hospital includes accepting calls and treatment patients as necessary when we are on call. Not providing care to a critically ill newborn when on call could be construed as patient abandonment. Therefore, neonatal care at WCA Hospital cannot be assigned to any other physicians." *Id.*

11. On May 11, 2010, Dr. Hooda sent a letter to Dr. Garone, confirming his resignation from Southern Tier Pediatrics, which was anticipated to take effect on June 30, 2010. *Appendix No. D.*

12. Later that day, the WCA Hospital Pediatric Care Evaluation Committee accepted Plaintiff's resignation and forwarded the letter of resignation to the Credentials Committee. The Minutes state, "Barkat Hooda, MD has submitted a letter of resignation from the WCA Hospital Medical Staff, with his last day of work anticipated to be June 30, 2010." *Appendix No. E.*

13. Dr. Hooda was a physician on call at WCA Hospital on June 2, 2010.

14. On June 2, 2010, patient N.C. arrived at WCA Hospital in premature labor. *Appendix No. G.*

15. On June 2, 2010, the attending obstetrician, Dr. Robert Daniels, requested that Dr. Hooda, as physician on-call, attend to patient N.C. who was in late second trimester premature labor. Donna Barber, RN, who was working as a neonatal nurse on June 2, 2010, was directed by Dr. Daniels to call Dr. Hooda. *Appendix No. HH, ¶16 & II, ¶ 8, 9, & 10.*

16. Upon receiving a call from Ms. Barber at approximately 12:50 on June 2, 2010, Dr. Hooda refused to attend to this patient, instead indicating that Dr. Khan, Dr. Hooda's supervising physician and employer, should respond instead, even though Dr. Khan was not on call. *See Appendix No. II at ¶¶ 10-11, Appendix No. HH, ¶16.*

17. Ms. Barber ended that call and contacted Dr. Khan at 12:55, who indicated he would be right there. Dr. Khan also directed that Ms. Barber contact Dr. Hooda and tell him to attend the delivery. *Id.*

18. At 12:58, a call was placed to Dr. Hooda's cell phone but there was no answer and a message was left. *Appendix No. F.*

19. Another call was made to Dr. Hooda by Ms. Barber at 13:04 and a request was made for Dr. Hooda to come for delivery. *Appendix F, Appendix No. II at ¶¶ 11-12.*

20. Dr. Khan arrived at the Hospital at 13:08. *Appendix F.*

21. Dr. Hooda arrived at WCA Hospital to attend to the patient at 13:12. Upon arrival, however, Dr. Hooda first went to the WCA Hospital administration before attending to the patient in delivery. *Appendix II. at ¶¶ 14-16, and Appendices Nos. F, G, H, & HH.*

22. By the time Dr. Hooda arrived to care for the patient, Dr. Khan had already arrived and was attending to the patient. Even when Dr. Hooda was present at WCA Hospital, he did not provide any substantive care for the patient. *Id.at II, ¶16.*

23. The infant was born at 13:16, but died after resuscitation attempts were unsuccessful. *Appendices Nos. F, G, & H.*

24. On June 2, 2010, Dr. Hooda added a progress note in patient N.C.'s chart concerning the delivery that contained inappropriate or incorrect statements about the Plaintiff's role in the delivery and the capabilities of WCA Hospital. *Appendix No. I & II, ¶16., HH ¶16.*

25. On June 7, 2010, the WCA Hospital OB/GYN Care Evaluation Committee held a meeting regarding the events on June 2, 2010. *Appendix No. K.*

26. The committee noted that Dr. Hooda's progress note was not factually correct. *Id.*

27. According to the Committee Minutes, the Medical Director was requested to contact Dr. Hooda to request a correction of the progress note. The Committee also indicated that the Department of Pediatrics was to review the response by the on-call pediatrician. *Id.*

28. Dr. Garone contacted STP on June 7, 2010 to speak with Dr. Hooda. A message was left with STP for Dr. Hooda. *Appendix KK.*

29. Telephone calls were made by Carol Gallagher, WCA's Credentialing Specialist, to STP on June 8, 2010, June 11, 2010, and June 15, 2010. *Appendix L.*

30. On June 11, 2010, the Plaintiff sent an email to Carol Gallaher and Dr. Garone at WCA Hospital accelerating his resignation from June 30, 2010 to June 13, 2010, and requesting

that the Hospital close his file as of June 13, 2010. He also surrendered his Hospital ID and pager, and signed all pending charts as of June 10, 2010. *Appendix No. M.*

31. On or about June 11, 2010, Southern Tier Pediatrics terminated Dr. Hooda's employment. Dr. Hooda did not provide a forwarding address in Texas, where he accepted a new position. *Appendix No. N & O.*

32. After becoming aware of Plaintiff's June 11, 2010 acceleration of his resignation of privileges, Defendant Wright contacted Dr. Hooda by phone at 2:45 on June 11, 2010. Ms. Wright informed Dr. Hooda that a quality review was in process and that Dr. Garone had been attempting to reach him and that he should not leave town without completing the quality review. He was requested to meet with the VPMA/Medical Director, Dr. Garone, prior to leaving Jamestown and an appointment for Dr. Hooda to meet with Dr. Garone was scheduled for June 14, 2010 at 1:30 pm. *Appendix JJ & EE (Attachments No. 9 & 10).*

33. Dr. Hooda did not attend a scheduled June 14, 2010 meeting with Dr. Garone to discuss this matter. *Appendix No. P.*

34. Dr. Garone sent him an email on June 14, 2010, to the same email address used previously by Dr. Hooda, indicating that he did not appear for the scheduled meeting. He was also notified in the email that there were "several issues regarding this quality review" that needed to be discussed. *Appendix No. P.*

35. On July 13, 2010, a Quality Review Improvement form was completed for the June 2, 2010 incident involving the Plaintiff. The "Assessment" field of the form states, in part, that the "Note by Dr. Hooda [was] not appropriate" and "Delay in Dr. Hooda to respond to on call responsibility not appropriate." *Appendix No. Q.*

36. A Pediatric Care Evaluation Committee meeting was held on July 13, 2010. The events of June 2, 2010 were reviewed by the Committee. *Appendix No. R.*

37. According to the July 13, 2010 Minutes' Discussion section, they found that multiple requests were made of Dr. Hooda to addend his medical record of June 2, 2010 since his comments regarding maternal care were not accurate and that Plaintiff did not attend an appointment scheduled for him to meet with the Medical Director about this case. The Committee also found that while Plaintiff was intending to resign on June 30, 2010, he left in the middle of the month. *Id.*

38. The Committee's conclusion regarding the June 2, 2010 incident was that there was an initial refusal and subsequent delay in attending a high risk delivery by Plaintiff, and that those actions did not meet the standard of care or the expectations of the Medical Staff at WCA Hospital. *Id.*

39. The minutes also state that the reporting requirements under New York State law for refusal to respond were reviewed and that the Department supported the Administration's review and decision to report the events to the OPMC. *Id.*

40. Following these events, a letter was prepared by Virginia Campion, M.D., the Pediatric Department Chairman, to Dr. Hooda. The letter relayed the Committee's findings that he did not comply with the standard of care for refusing to attend the delivery for which he was the responsible pediatrician. *Appendix No. S.*

41. The letter also stated that it was being sent to him to inform him of the outcome of the peer review and that it will be entered in his quality review file. *Id.*

42. On July 22, 2010, Ms. Wright sent Plaintiff a letter via certified mail, return receipt requested, at his last known Texas address.  This letter confirmed Ms. Wright's

conversation of June 11, 2010 with Plaintiff advising him of a pending investigation and that Plaintiff would attend a meeting with Dr. Garone on June 14, 2010. *Appendix No. T*.

43. This letter also confirmed that multiple attempts were made to contact the Plaintiff regarding the investigation without success. The letter also indicated WCA's intention to report the Plaintiff to the New York OPMC for his failure to present for the appointment on June 14, 2010. *Id.*

44. On or about August 4, 2010, WCA received a notice from the Unites States Postal Office that the July 22, 2010 certified letter to the Plaintiff was returned as "REFUSED." *Appendix No. U*.

45. On August 26, 2010, WCA Hospital sent an adverse action report to the NPDB. *Appendix No. V*.

46. The Type of Adverse Action was Title IV Clinical Privileges and the Basis for Action of "inappropriate refusal to treat (FA)" and also included a "Basis for Action" of "inappropriate refusal to treat (FA)." The NPDB Report further stated that Plaintiff, "refused to attend a delivery for a critically ill infant when he was the responsible physician on call. Physician resigned his medical staff privileges and left the area while under investigation for his failure to respond as required." *Id.*

47. The Classification Code(s) indicated "voluntary surrender of clinical privilege(s), while under, or to avoid, investigation relating to professional competence or conduct (1635)." The date action was taken was listed as 7/13/2010 and the date action became effective was 7/22/2010. The length of action was "PERMANENT." Under the description of reasons for action the Report states, "Physician refused to attend a delivery for a critically ill infant when he

was the responsible physician on call. Physician resigned his medical staff privileges and left the area while under investigation for his failure to respond as required." *Id.*

48. On August 26, 2010, WCA Hospital sent a notification to the New York State Office of Professions of the NPDB Report concerning the Plaintiff. *Appendix No. W.*

49. Subsequently, Plaintiff prepared and submitted a Subject Statement that is included in the NPDB Report on November 18, 2010.

50. On September 14, 2010, the WCA Hospital Pediatric Care Evaluation Committee reviewed the events following the June 2, 2010 incident involving Dr. Hooda and noted that WCA is obligated to report this incident to the OPMC. *Appendix No. X.*

51. On December 16, 2010, Dr. Hooda commenced a lawsuit in U.S. District Court Texas against Betsy Wright, WCA Service (d/b/a/ WCA Hospital), Dr. Vicki Campion, Dr. T. Khan, and Dr. Daniels. Docket No. 1.

52. On January 14, 2011, the New York State Department of Health responded to Dr. Hooda regarding its investigation of the events on June 2, 2010 and its scheduled meeting with him regarding the report. *Appendix No. Z.*

53. An interview between Dr. Hooda and the New York State Department of Health took place on January 21, 2011. *Appendix No. Z.*

54. The Department of Health completed its investigation of Dr. Hooda. In the NYSDOH letter of On February 25, 2011, it stated, in part, that "everyone interviewed by this Office supported the claim that it was not your intention to be present for the delivery… on June 2, 2010". *Appendix No. AA.*

55. On June 8, 2011, Dr. Hooda requested that Betsy Wright withdraw the NPDB report. *Appendix DD.*

56.     On April 4, 2011, Dr. Hooda requested that the Secretary of the Department of Health and Human Services review the Adverse Action Report, submitted on August 26, 2010 by WCA Hospital.  *Appendix No. BB & CC*.

57.     On August 11, 2011, the Defendant WCA Hospital served a response to the correspondence from the Department of Health and Human Services, which provided an explanation for the reasons for the Report with supporting documents. *Appendix No. EE.*

58.     On November 7, 2011, the Department of Health and Human Services, Bureau of Health Professions, issued a decision denying the Plaintiff's review and challenge of the Report. *Appendix No. FF*.

59.     The decision found that the Report was factually accurate as a reflection of the reasons WCA took action and the action taken. *Id.*

60.     The Secretary of the Department of Health and Human Services amended the Plaintiff's NPDB report to include the findings from the Secretary's November 7, 2011 decision. *Appendix No. GG*.

Dated: July 3, 2012
       Buffalo, New York

Respectfully submitted by:

/s/Stephan A. Manuele
Stephen A. Manuele, Esq.
FELDMAN KIEFFER, LLP
Attorneys for Defendants, WCA
HOSPITAL and BETSY WRIGHT
The Dun Building, Suite 400
110 Pearl Street
Buffalo, New York 14202
(716) 852-5875
smanuele@feldmankieffer.com