UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARKAT S. HOODA, M.D.,<br><br>*Plaintiff,*<br><br>V.<br><br>W.C.A. SERVICES CORPORATION d/b/a WCA HOSPITAL, ET AL.,<br><br>*Defendants.* | WDNY DOCKET NO. 1:11-cv-00504<br><br>**REPLY ATTORNEY AFFIDAVIT** |

STEPHEN A. MANUELE, being duly sworn deposes and says:

1. I am an attorney at law duly licensed to practice in the State of New York and in the United States District Court for the Western District of New York. As a Partner in the law firm of Feldman Kieffer, LLP, attorneys for the Defendants, WOMAN'S CHRISTIAN ASSOCIATION OF JAMESTOWN, NEW YORK, INC., d/b/a/ WCA HOSPITAL, incorrectly sued herein as W.C.A. SERVICES CORPORATION, d/b/a/ WCA HOSPITAL, and BETSY WRIGHT, in the above-entitled matter, I am fully familiar with the facts and circumstances of this action.

2. I make this Reply Affidavit in further support of Defendants' motion for summary judgment dismissing the Plaintiff's Complaint pursuant to F.R.C.P. 56.

3. The issues here are whether the Defendants acted in a reasonable manner in investigating the events of June 2, 2010 and whether the Defendants' report to the NPDB was truthful. Nothing presented by the Plaintiff rebuts Defendants' entitlement to summary judgment and presumption of immunity under HCQIA.

4. Initially, we observe that Plaintiff did not request additional discovery in order to oppose Defendants' motion for summary judgment. Therefore, Defendants' motion can be decided on the record presented.

5. Plaintiff has not properly contested the Statement of Material Facts submitted in support of Defendants' motion. Therefore, Plaintiff's opposition statement should not be considered and the motion held uncontested.

6. The U.S. District Court for the Western District of New York Local Rule 56(a)(2) states that:

> **Opposing Statement.** The papers opposing a motion for summary judgment shall include a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs and, if necessary, additional paragraphs containing **a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried**. Each numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement. [Emphasis added].

7. In opposition to Defendants' Rule 56 motion, Plaintiff submitted a 286 page Opposing Statement and Response to Defendants' Statement of Material Fact. [Docket No. 77]. In response to each factual contention contained in Defendants' Statement of Material Fact, Plaintiff raises the same general evidentiary "objections" under FRCP 56(c)(1)(B), 56(c)(2), and 56(c)(4) as to each fact asserted and does not state if the fact is being disputed or what additional genuine issues of facts exists. Plaintiff's response then proceeds, for each numbered paragraph, to repeat for multiple pages, a summary of Plaintiffs' only preferred evidence: Plaintiff's self-serving affidavits (Ex. 3) and the affidavit of Plaintiff's proffered expert witness (Ex. 4). The Opposing Statement was signed by Plaintiff's counsel.

8. As discussed in Defendants' Reply Memorandum of Law, Plaintiff Opposition Statement clearly does not comply with the WDNY's Local Rule 56. Plaintiff's Opposition Statement does not alert the Court or counsel as to what facts are genuinely in dispute, but instead invites us to guess or sort out where there are issues of fact. Since Plaintiff's assertions are not specific enough to provide notice of what facts are in dispute, these amount to general objections only and Defendants' Statement of Material Facts should be considered uncontested under FRCP 56(e)(2).

9. Additionally, and as discussed in Defendants' Reply Memorandum of Law, Plaintiff objects to certain fact issues without a reasonable basis or information. Plaintiff also objects to certain facts which he asserts himself in his affidavits or pleadings. For example, Plaintiff raises an objection:

   a. to being a licensed physician in New York State [Docket No. 77, No. 4, See Ex. 1, ¶ 9];
   b. that he was employed by Southern Tier Pediatrics [Docket No. 77, No. 5 See Ex. 1, ¶ 9];
   c. that he had staff privileges at WCA Hospital [Docket No. 77, No. 6, See Ex. 1, ¶ 9];
   d. that he informed WCA of his resignation [Docket No. 77, No. 7, 12, See Ex. 1, ¶ 57];
   e. that he was a physician on-call on June 2, 2010 [Docket No. 77, No. 13, See Ex. 1, ¶21];
   f. that patient N.C. arrived on June 2, 2010 in premature labor [Docket No. 77, No. 14, See Ex. 1, ¶21];
   g. Dr. Hooda first stopped in WCA administration office before attending to the patient. [Docket No. 77, No. 21, See Ex. 1, ¶23-24];
   h. Dr. Khan was attending the patient when Plaintiff arrived. [Docket No. 77, No. 22, See Ex. 1, ¶26-27];

i. that the baby was born but resuscitation attempts were unsuccessful [Docket No. 77, No. 21, See Ex. 1, ¶34, 37];

j. that Plaintiff sent an email to Carol Gallagher by Plaintiff on June 11, 2010 whereby he accelerated his final day of work from June 30, 2010 to June 13, 2010 [Docket No. 77, No. 30, Appendix No. M];

k. that Plaintiff received an email from Dr. Garone sent to his personal email address on June 14, 2010 concerning his missed appointment, which was disclosed by Plaintiff's counsel during discovery [Docket No. 77, No. 34, Appendix No. P];

l. that Plaintiff commenced a lawsuit on December 16, 2010 [Docket No. 77, No. 51, Docket No. 1];

m. that Plaintiff demanded that Defendant Wright withdraw the NPDB report [Docket No. 77, No. 55, Appendix No. DD];

n. that Plaintiff requested that the DHHS review the NPDB report [Docket No. 77, No. 56, Appendix No. BB];

o. that WCA submitted an Adverse Action Report to the NPDB [Docket No. 77, No. 45, Appendix No. V];

10. The facts set forth above were either admitted by Plaintiff or so fundamental to the case so as to be uncontested. We question why these, and other, facts were objected to without reasonable basis. With respect to the remaining responses in Plaintiff's Opposition Statement, he does not articulate what facts are genuinely in dispute or the specific basis for an evidentiary objection.

11. Since Plaintiff's Opposition Statement is not in compliance with the Local Rules and contains unreasonable objections, it should not be considered on Defendants' motion.

12. The only proof submitted in opposition are Plaintiff's three (3) Affidavits and the expert Affidavit of John Dale Dunn, MD/ JD. As set forth in Defendants' Reply Memorandum of Law, Plaintiff's Affidavits are self-serving, conclosury and contain uncorroborated statements. As such, they hold no weight and cannot be used to defeat Defendants motion.

13. As set forth in Defendants' Reply Memorandum of Law, Plaintiff's expert Affidavit is inadmissible under F.R.E. 702 and cannot be considered in opposition to Defendants' motion.

14. Plaintiff attempts to raise an issue of fact concerning his resignation and voluntary surrender of privileges in an effort to challenge Defendants' 11137 immunity.

15. The critical fact is not the date of Plaintiff's resignation letter. The critical facts are: the last day he intended to work, which was June 30, 2010; the date the Hospital initiated its investigation (i.e., quality review activity); and the date of his departure from New York State, June 13, 2010.

16. There is no dispute in the record that Plaintiff originally intended to leave Jamestown, New York for Texas on June 30, 2010. According to the resignation letter of Dr. Hooda to WCA Hospital's Vice President of Medical Affairs/ Medical Director Dr. Marlene Garone, Plaintiff writes that, "As per our mutual understanding reached yesterday, my last day of work is anticipated to be June 30, 2010." [Appendix No. D]. Plaintiff further writes that, "We plan to leave Jamestown on or after June 30, 2010 post completion of the academic year..." *Id.* Plaintiff's June 30, 2010 last day of work was accepted by the Pediatric Care Evaluation Committee on May 11, 2010. [Appendix No. E].

17. Plaintiff's argument that there is an issue on whether he surrendered his privileges when he resigned is contrary to Plaintiff's own statements. In his May 3, 2010 resignation email

to Betsy Wright, Plaintiff writes, "I will continue my contractually mandated duties for STP including level I neonatology care at WCA during the notice period." [Appendix No. B]. This statement by the Plaintiff proves that he did not surrender his privileges on the date of his resignation. The fact Plaintiff admitted he was the physician on call on June 2, 2010 also corroborates that he still maintained clinical privileges at WCA during his resignation notice period (i.e., until June 30, 2010). Accordingly, there is no genuine issue of fact of the date of surrender.

18. Likewise, there is no issue of fact on whether the Defendants accepted surrender of Plaintiff's privileges after accelerated his final day of work.

19. As per Plaintiff's own admission, he left Jamestown, New York on June 13, 2010. On June 11, 2010, Plaintiff wrote in his email to Carol Gallagher at WCA Hospital, "Kindly close my hospital file effective midnight of Sunday June 10, 2010" and "I have sent you [my] Hospital badge and pager via mail that should reach you today. Additionally, I have signed off all pending charts as provided by Mary in the Medical Records yesterday at 7:35 AM as well." [Appendix M]. The fact that Plaintiff had previously stated that he would continue level I neonatology care at WCA during the notice period [Appendix B], but failed to do so by leaving town two weeks before June 30, 2010, further proves that his actions on June 13, 2010 constituted a surrender of his privileges at WCA. As discussed herein, this interpretation was accepted by the DHHS in its Secretarial Review Decision.

20. It is undisputed that WCA accepted Plaintiff's surrender of his clinical privileges. Members of the Hospital's Medical Staff may be granted clinical privileges.[Appendix A, Article III- Membership]. According to the July 13, 2010 Pediatric Care Committee Minutes, it was found that Plaintiff's conduct did not meet the standard of care or expectations of the Medical

Staff at WCA. [Appendix No. R]. Additionally, the September 14, 2010 Pediatric Care Committee Minutes indicate that the Plaintiff was no longer on the WCA Medical Staff. [Appendix No. X]. The only interpretation is that WCA "accepted" his surrender of privileges after he left Jamestown on June 13, 2010. Subsequent actions taken by WCA hospital concerning the Plaintiff also indicate an acceptance of his surrender. For example, according to the July 13, 2010 Pediatric Care Evaluation Committee minutes, the Hospital arranged to cover the pediatric back up assignments due to the Plaintiff's departure. [Appendix No. R].

21. Plaintiff attempts to raise issues of fact regarding the professional review activity (the investigation) conducted by WCA. Plaintiff, and his expert, claims that he was not under disciplinary investigation when he resigned and therefore the NPDB report was false.

22. Once again, Plaintiff's argument misstates the critical facts. There is no dispute in the record that on June 7, 2010 the OB/GYN Care Evaluation Committee directed the Vice President of Medical Affairs, Dr. Marlene Garone, to investigate Plaintiff's conduct on June 2, 2010 and the note he entered into the patient's chart. [Appendix No. K]. Multiple attempts were made to reach the Plaintiff. The fact that the Plaintiff self-servingly claims he did not know about the investigation or did not know he was the subject of it is irrelevant, and also contrary to the facts. As discussed in the Reply Memorandum of Law, HCQIA does not require that the Plaintiff participate in the review of his own care or be placed on notice that he is the subject of an investigation.

23. The facts also show that the Plaintiff was on notice of the June 14, 2010 meeting with Dr. Garone, and that he did not attend. Even though Plaintiff self-servingly denies any conversation with Ms. Wright regarding the June 14th meeting, the email from Dr. Garone provided during discovery by Plaintiff (that was sent to Plaintiff's private Google email address)

shows that he was on notice of the meeting. [Appendix No. P]. Whether or not the Plaintiff knew he was being investigated is irrelevant.

24. Plaintiff claims that he was not given formal notice of the proposed professional review action and the opportunity for a hearing.

25. As discussed in Defendants' Memorandum of Law, they are entitled to immunity under Section 11137 regardless of Section 11112. In any event, Plaintiff's interpretation of the facts is not supported in the record or legally insufficient to generate an issue of fact.

26. Plaintiff argues that the June 14, 2010 email from Dr. Garone was not sufficient notice and that he was not aware he was the subject of a review. He claims that he believed that the emails he received where about other people and not himself.

27. As discussed in Defendants' Memorandum of Law, nothing in the HCQIA requires that a physician be permitted to participate in the review of his care. Likewise, the DHHS' own interpretation of its guidelines make reportable the surrender of privileges regardless of whether the physician knew he was under investigation or not. Therefore, Plaintiff's argument that he either did not know he was being investigated or that the investigation was about someone else is irrelevant.

28. Likewise, Plaintiff's construction of the June 11, 2010 all from Betsy Wright to Dr. Hooda is irrelevant. Even if Plaintiff did not know he was the subject of a report, he had no entitlement to participate in the review of his care, and he did not need to be aware he was being investigated.

29. The June 14, 2010 email from Dr. Garone was clearly an attempt by Dr. Garone to pursue a meeting to discuss those events. This was done at the direction of the OB/GYN Care Evaluation Committee on June 7, 2010. This was part of the professional review activity of the

case. The professional review action taken by WCA was done after the investigation was closed and the committee met in July. Plaintiff's attempt to construe Ms. Wright's conversation with him or Dr. Garone's June 14, 2010 email as "notice" is an attempt at a straw man argument.

30. Plaintiff's analysis ignores the fact that he refused to provide a forwarding address when he moved to Texas and mail that was sent to him certified was returned as "REFUSED," [Appendix U] and not as "undeliverable" as suggested in his opposition Memorandum of Law. The only interpretation of the facts is that Plaintiff waived any further rights to challenge the recommended professional review action by his own behavior.

31. Plaintiff has not rebutted the admissibility of the DHHS Secretarial Review Decision, which held that the NPDB Report by WCA was factually accurate. [Appendix No. FF]. The Secretarial Review Decision also found that Plaintiff was under investigation when he resigned his privileges and moved to Texas and that WCA was legally required to make its report to the NPDB. The DHHS additionally points out that the Plaintiff misconstrues the Report identifier of "FA", which does not mean "failure to attend" but "inappropriate refusal to treat." This assertion is incorrectly repeated in Plaintiff's Affidavit [Docket No. 78-1, paragraph 62.]. The DHHS also rejected Plaintiff's claim that he was never notified by WCA of any hospital investigation concerning him. The DHHS found, "... whether or not you were notified in wiring of any hospital investigation concerning you has no bearing on the fact that voluntary surrenders while under investigation are reportable." [Appendix No. FF, P00273].

32. While Plaintiff argues retaliation, as discussed in Defendants' Reply Memorandum of Law, subjective bias or bad faith of the peer reviews is irrelevant. Likewise, Defendant's hostility is irrelevant. It is telling that while Plaintiff wants to portray himself as a whistleblower, he never brought a *qui tam* claim. Moreover, the three doctors who threatened

him (Dr. Khan and Dr. Daniels) or conspired to report him (Dr. Campion) were voluntarily let out of the action by Plaintiff.

33. Nothing presented by the Plaintiff creates a genuine issue of fact to defeat Defendant's entitlement to summary judgment. Defendants have met their burden to show that their report was accurate and that the professional review activity and action it took against the Plaintiff were reasonable and in furtherance of patient care. Plaintiff has offered nothing but conjecture, uncorroborated self-serving statements, and legally irrelevant arguments in his opposition. Based upon the foregoing, Defendants' motion for summary judgment should be granted along with its counter-claim against Plaintiff.

WHEREFORE, Defendants, WOMAN'S CHRISTIAN ASSOCIATION OF JAMESTOWN, NEW YORK, INC., d/b/a/ WCA HOSPITAL, incorrectly sued herein as W.C.A. SERVICES CORPORATION, and BETSY WRIGHT, request an Order dismissing the Complaint and granting its counter claim for attorney fees, along with any other relief that the Courts deems just and proper.

/s/ Stephen A. Manuele
STEPHEN A. MANUELE

Sworn to on
August 13, 2012

/s/ Margaret A. Kliszak
NOTARY PUBLIC
State of New York
Erie County
My Commission Expires 5/15/15