UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARKAT S. HOODA, M.D., <br><br> *Plaintiff,* <br><br> V. <br><br> W.C.A. SERVICES CORPORATION d/b/a WCA HOSPITAL, ET AL., <br><br> *Defendants.* | WDNY DOCKET NO. 1:11-cv-00504 |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT DISMISSING THE PLAINTIFF'S COMPLAINT.**

**ARGUMENT**

I. <u>Plaintiff Has Not Properly Contested Defendants' Evidence In Support of Summary Judgment.</u>

According to Rule 56(e), if a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may, among other relief, consider the fact undisputed for purposes of the motion or grant summary judgment if the motion and supporting materials (including the facts considered undisputed) show that the movant is entitled to it.

As discussed in the Reply Attorney Affidavit, Plaintiff's Opposition Statement of Material Fact does not comply with Local Rule 56 (a)(2). The Opposition Statement amounts to general objections without specificity as to what items are really being admitted or disputed. Plaintiff also does not make legal arguments in his Memorandum of Law challenging the admissibility of any specific items of evidence Defendants submitted in their Appendix. As such, Plaintiff should be deemed to have waived any opposition to Defendant's Statement of Material Fact, and thus such facts held uncontested. *Cf., Johnson v. United Postal Services,* 64 F.3d 233,

237 (6th Cir. 1995) (On *de* novo review, if a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such material are deemed to have been waived...) Furthermore, Plaintiff's Opposition Statement, which is clearly in disregard of local practice, should not be considered on Defendants' motion. *For example, see, Davila Rivera v. Caribbean Refrescos, Inc.* 332 F. Supp. 2d 435 (DC Puerto Rico 2004), *aff'd* 150 Fed Appx 3 (CA1 Puerto Rico 2005) (Magistrate properly struck plaintiffs' opposition to defendants' motion for summary judgment because it exceeded local rules' page limit and, therefore, summary judgment motion was deemed unopposed.)

Plaintiff also made denials of factual contentions without reasonable basis or information. As discussed more fully in Defendant's Reply Attorney Affidavit, Plaintiff raises objections to facts that have no reasonable basis to oppose, are supported by admissible evidence, or that Plaintiff himself either pleads in his own Complaint and attests to in his Affidavits. Submitting a nearly three hundred page Opposition Statement is unreasonable, particularly when the Statement lacks sufficient specificity as to what material facts are being disputed or not-disputed. Accordingly, Plaintiff's unreasonable denials of facts warrant that the entire Opposition Statement be stricken. *See, U.S. v. Thompson*, 2003 U.S.Dist LEXIS 23021 (E.D. Cal. 2003).

The only documents that Plaintiff submits in opposition to Defendants' motion are three self-serving affidavits by Plaintiff and an inadmissible expert affidavit. In his Opposition Statement, Plaintiff only cites to his 2012 Affidavit (Ex. 3) and his expert's Affidavit (Ex. 4). As set forth herein, the proffered Affidavits are inadmissible and should not be considered on Defendants' motion.

A court is not required to accept the non-movant's self-serving and conclusory assertions. *Moore v. Hernandez, et al.*, 128 Fed. Appx. 39 (10th Cir. 2005). Self-serving statements in affidavits without factual support in the record carry no weight on summary judgment. *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921 (7th Cir. 2004). *Simpkins v. U.S.*, 253 F.Supp.2d 4 (D.C. Dist. 2003) (In responding to a summary judgment motion, the non-moving party may not rely solely on mere conclusory allegations.) Moreover, speculation and conclusory allegations are insufficient to meet non-movant's burden on summary judgment. *Good v. Presbyterian Hospital*, 934 F.Supp. 107 (SDNY 1996).

Plaintiff's self-serving and conclusory statements include, for example: 1) his desire to end his affiliation with WCA and STP because of practices he did not condone [Docket No. 78-3, ¶12, 29, 72], 2) that he did not agree to meet with WCA on June 14, 2010 [Docket No. 78-3, ¶54], 3) that he had no knowledge of an investigation against him [Docket No. 78-3, ¶68], and 4) that the NPDB report was a "complete fabrication" [Docket No. 78-3, ¶70, 79, & 95].

In the summary judgment context, self-serving opinions without objective corroboration are not considered probative. *Wahi v. Charleston Area Medical Center*, 453 F.Supp.2d 942 (S.D. WVa. 2006) (Court did not consider plaintiff's self-serving affidavit submitted in opposition to motion for summary judgment on HCQIA immunity.) Plaintiff cannot support the self-serving statements contained in his Affidavits. For example, with respect to Plaintiff's contention that he had no knowledge of an investigation against him, Plaintiff disclosed as part of his initial disclosures the June 14, 2010 email from Dr. Garone to him at his personal email address which questioned why he did not appear at the agreed upon meeting to discuss the incident of June 2, 2012. *See, Exhibit P* to Defendants' Motion (Plaintiff's Bate No. 00252-00253.)   Since the Plaintiff disclosed this email as part of his discovery responses, it should be considered

uncontested. Moreover, while Plaintiff would like to present himself as a "whistleblower," Plaintiff did not provide any substantive or detailed responses in his Answers in Interrogatories (beyond the conclusory statements contained in paragraphs 12, 13, 14, & 15 of his Affidavit) when asked to particularize: 1) incidents of substandard care he witnessed at WCA (*Exhibit MM*, No. 5); 2) facts supporting that OB/GYN services was a major revenue source for WCA (*Exhibit MM*, No. 7); 3) complaints Plaintiff made to the hospital concerning unethical or immortal acts he witnessed prior to June 3, 2010 (*Exhibit MM*, No. 8); and 4) reports he made to government authorities regarding substandard conduct he observed (*Exhibit MM*, No. 9).

Since Plaintiff's affidavits submitted in opposition contain uncorroborated self-serving conclusions, they are incompetent proof and should not be considered on Defendants' motion.

Plaintiff submits an affidavit in support of his opposition by a professional expert, John Dale Dunn, MD JD. Fed. R. Evid. 702 imposes five requirements on proffered expert testimony: (1) the witness must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the offered testimony or opinion must be based upon sufficient facts or data; (3) the offered testimony or opinion must be derived from reliable principles and methods; (4) the expert witness must have applied the principles and methods reliably to the facts of the case; and (5) expert or specialized knowledge must be helpful in assisting the trier of fact to understand the evidence or to determine a fact in issue. *Owens v. Ford Motor Co.*, 297 F.Supp2d 1099 (S.D. Ind. 2003). None of the five (5) requirements of Rule 702 are satisfied by Mr. Dunn.

Mr. Dunn's opinion is utterly without foundation. He states, under oath, that his understanding of the pertinent facts is based upon his review of "Dr. Hooda's affidavit and supportive material provided by [Plaintiff's counsel], to include defendant hospital WCA's responsive pleadings." The "supportive documents" are never identified in his Affidavit. Mr.

Dunn does nothing more than repeat the self-serving and conclusory statements verbatim contained in Dr. Hooda's affidavit. [*For example, see* Docket No. 78-4, paragraph 25]. There is no foundation for his opinion expressed in Paragraph 27, and, in fact, his opinion is speculative, and preconditioned on "if the facts asserted by Dr. Hooda are found to be true." Moreover, Mr. Dunn does not even grasp the issues raised in Defendants' motion, which is evidenced by his misunderstanding of the legal arguments by Defendants on immunity and the mechanisms for NPDB reporting, which suggests he lacks the requisite skill to render an opinion. Nothing contained in Mr. Dunn's affidavit would assist the trier of fact; he does nothing more than repeat Plaintiff's contentions and misapplies the law of HCQIA. Finally the methodological basis for his opinion is also not set forth. This inadmissible proof is nothing more than attempt to present legal opinion in the guise of expert testimony.

Since Plaintiff has not properly contested Defendants' Statement of Material Fact and relies on inadmissible evidence, Defendants' motion should be considered uncontested.

II.   Plaintiff Has Not Rebutted Defendant's Presumption of Immunity Under HQCIA.

Plaintiff raises two arguments in opposition to Plaintiff's entitlement to immunity under Section 11137. Neither argument has any support in either legal authority or the factual records.

Plaintiff argues that since this Plaintiff resigned on May 3, 2010, he did not resign while under investigation for the events of June 2, 2010. He argues that his resignation amounts to a surrender, and that there are issues of fact as to whether the Hospital "accepted" Plaintiff's surrender of privileges when he left New York State for Texas to start another job. These strained arguments have no merit, and if accepted, would eviscerate the protections afforded peer reviewers under HCQIA.

There are only a few cases interpreting Section 11137 immunity. Neither HCQIA nor its regulations define the term "acceptance" or "surrender." Those terms, however, should be given a plain meaning as they were intended in the statute and regulations.

Section 11133(a)(B)(i) of HCQIA conditions reporting on the surrender of clinical privileges, not the date of resignation of employment. Plaintiff's attempt to equate "resignation" as the only means of "surrender" is unpersuasive and has no support in the authority.

Resignation is not the only situation where a physician may surrender his privileges. *See, Lee v Hosp. Auth.*, 353 F.Supp.2d 1255 (M.D. Ga. 2004) (application for reappointment.) *and Diaz, infra*. The NPDB Guidebook proposes a situation where failing to renew clinical privileges is a reportable voluntary surrender:

> "A physician was under investigation four weeks prior to the expiration of his clinical privileges. **The physician failed to renew his clinical privileges. This event is considered a reportable surrender while under investigation.** This action is reportable regardless of whether the physician knew he was under investigation at the time he failed to renew his clinical privileges. A practitioner's awareness that an investigation is being conducted is not a requirement for reportability." Pg. E-23. [Emphasis added].

The NPDB Guidebook is published by the DHHS and sets forth an interpretation of its own regulations. As such, it should be given deference. *See, Diaz v. Provena Hospital*, 352 Ill. App. 3d 1165 (App. Ct. Ill. 2nd Dist. 2004).

According to the NPDB Guidebook, it is reportable if a physician or dentist voluntarily restricts or surrenders clinical privileges while his professional competence or professional conduct is under investigation. Table E-3, Pg. E-21. The NPDB Guidebook provides the following instructions on the reportability of surrenders during investigations:

> "Are investigations reportable if they do not reach a conclusion? Investigations are not reportable events; however, **if a practitioner surrenders or fails to renew clinical privileges, or if privileges are restricted while the practitioner is either under investigation by a health care entity for possible incompetence or improper**

**professional conduct, or to avoid an investigation**, the surrender or restriction must be reported to the NPDB. Pg. E-34 [Emphasis added].

As discussed in Defendants' motion and Reply Attorney Affidavit, there are no genuine issues of fact that Plaintiff resigned in or around May 11, 2010, but intended to work and maintain privileges until June 30, 2010. There is likewise no dispute that the Plaintiff left work on June 13, 2010, six days after a quality assurance investigation was directed by the Hospital's Pediatric Care Evaluation Committee on June 7, 2010 and commenced by Dr. Garone. Plaintiff was placed on notice of this investigation, which is evidenced by his communications with Betsy Wright and the email he received from Dr. Garone indicating that he failed to show for a meeting on June 14, 2010.

Plaintiff argues that there is an issue of fact on whether the Hospital accepted his surrender of privileges. There is no genuine dispute on this fact, and the only interpretation is that the Plaintiff voluntarily surrendered his privileges on June 13, 2010. To suggest otherwise would require the Court to accept the argument that Dr. Hooda intended to maintain privileges in Jamestown, New York after he left the region to take other employment in Texas. Plaintiff has offered nothing by way of evidence that proves his resignation and new employment was meant as anything but a final disassociation with WCA Hospital.

Defendants' entitlement to relief is further supported by the DHHS's decision upholding the Hospital's report to the NPDB as factually accurate. The DHHS found that the plaintiff voluntarily surrendered his clinical privileges while under investigation by the Hospital. Plaintiff did not rebut the presumption of admissibility of this decision by the DHHS. Since Section 11137 applies to the Defendants, they are entitled to immunity since the report to the NPDB was factually accurate.

Plaintiff next argues that since WCA did not provide proper notice or hearing of a professional review action, and thus the safe harbor provisions of Section 11112(b) do not apply. However, Plaintiff's arguments are inapposite and do not defeat Defendants' entitlement to immunity.

Initially, if Defendants are found immune under Section 11137, then the court need not consider its arguments on Section 11112 immunity. Defendants are entitled, as alternative relief, to immunity under Section 11112 *in addition to* Section 11137.

Section 11137 immunity was intended to address the exact situation Defendants find themselves here: when a doctor leaves town during an investigation in order to frustrate or avoid a Hospital's professional review activity. Defendants could not have provided adequate notice or a hearing if Plaintiff left town without providing a forwarding address. Without this protection, doctors, such as the Plaintiff, can inhibit the purpose of HCQIA and avoid reporting while potentially jeopardizing patient care.

Plaintiff tries to misconstrue the facts. Section 11112(b) provides that the failure of a review body to meet the enumerated conditions does not, per se, constitute a failure to meet the standards of Section 11112(a)(3). The first two elements of Section 11112(a) are 1) that the professional review action was conducted in the reasonable belief that the action was in the furtherance of quality health care and 2) after a reasonable effort to obtain the facts of the matter. Plaintiff has not offered any competent proof to rebut the presumption of reasonableness of the Defendants professional review action against him based upon the events of June 2, 2010.

Furthermore, it is clear that an investigation was ongoing when the Plaintiff accelerated his last day of work to the day before he was to meet with the Hospital to review the events of June 2, 2010. In fact, the DHHS confirmed this in its Secretarial Review decision. *See, Doe v.*

*Leavitt,* 552 F.3d 75, 79 (1st Cir. 2009) (elements for HCQIA investigation). In contrast to Plaintiff's behavior, the Hospital made multiple attempts to communicate with the Plaintiff regarding the Hospital professional review activity and action. Since the Plaintiff left during the investigation without providing a forwarding address, the only interpretation of the facts is that the Plaintiff waived a hearing under HCQIA. *See, Bryan v. Homes Regional Med. Ct.,* 33 F.3d 1318 (11th Cir. 1994).

The only arguments that Plaintiff raises in his opposition papers are that: 1) he didn't know he was the subject of an investigation or thought someone else was being investigated, and 2) WCA acted in bad faith and retaliated against him. None of these arguments are material to the issue of immunity. Nothing in the HCQIA requires that a physician be permitted to participate in the review of his care. *Singh v. BC/BS,* 308 F.3d 25 (1st Cir. 2002). (Insurer and auditor were immune from physician's claims related to termination of provider contract where peer review committee carefully conducted investigation and reviewed another physician's report, thereby fulfilling obligation imposed by 42 U.S.C. § 11112(a)(2)). Plaintiff's knowledge of whether he was the subject of the investigation is also irrelevant. HCQIA immunity is judged by an objective reasonableness standard, not a subjective one. *See, Cowett v TCH Ped.,* 2006 Ohio 5269 (2006). Thus, Plaintiff's claim of retaliation is irrelevant without some evidence challenging the reasonableness of the Hospital's decision to initiate an investigation and to reprimand him. *See, Chalal v. NW Med. Ct.,* 147 F.Supp.2d 1160 (N.D.Ala 2000) *and Egan v. Athol Mem. Hosp.,* 971 F.Supp. 37 (D.Ma. 1997). None has been presented here.

The summary judgment standard is not the same on an HCQIA Immunity contest. Defendant is presumed immune under Section 11112; it is Plaintiff's burden, therefore, to rebut that presumption of immunity. A plaintiff must demonstrate that there exists "a triable issue as

to whether the result reached by the peer review board was based on a reasonable belief that it was in furtherance of quality health care." *Reyes, supra.* Plaintiff has failed to do this here. Accordingly, Defendants are entitled, as independent and alternative relief, to immunity under Section 11112.

## CONCLUSION

There is no genuine dispute that the Defendants acted in an objectively reasonable manner in their conduct toward the Plaintiff and their report to the NPDB was true. Based upon the foregoing, Defendants are entitled to immunity. Since Plaintiff cannot succeed on the merits, his demand for equitable relief should also be dismissed. Furthermore, Defendants are entitled to relief on their counter-claims for attorney fees under HCQIA against the Plaintiff.

By: /S/ Stephen A. Manuele

Stephen A. Manuele, Esq.
FELDMAN KIEFFER, LLP
Attorneys for Defendants, WCA
HOSPITAL and BETSY WRIGHT
The Dun Building, Suite 400
110 Pearl Street
Buffalo, New York 14202
(716) 852-5875
smanuele@feldmankieffer.com