UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BARKAT S. HOODA, M.D.,

                                        Plaintiff,

               -vs-                                    11-CV-504A(Sr)

W.C.A. SERVICE CORPORATION
d/b/a WCA HOSPITAL, and
BETSY T. WRIGHT,

                              Defendants.
_____

APPEARANCES:               HUGHES ELLZEY, LLP (WILLIAM CRAFT HUGHES,
                           of Counsel), Houston, Texas, Attorneys for Plaintiff.

                           FELDMAN KIEFFER, LLP (STEPHEN A. MANUELE,
                           of Counsel), Buffalo, New York, Attorneys for
                           Defendants.


## REPORT, RECOMMENDATION AND ORDER

        This case was referred to the undersigned by the Hon. Richard J. Arcara,

pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon

dispositive motions. Dkt. # 43.  This case was originally brought in the District Court for

the Southern District of Texas and was transferred to this Court by order dated June 3,

2011.  Dkt. # 38.  Currently before the Court is the Defendants' motion (Dkt. # 72) for

summary judgment pursuant to Fed.R.Civ.P. 56.  Upon consideration of the record as a

whole, including the parties' written submissions and oral arguments, and for the

reasons that follow, it is recommended that Defendants' motion be granted in part and

denied in part.

## FACTUAL BACKGROUND

The following background facts are undisputed.[1]  Beginning in October 2009,

Plaintiff was employed as a pediatrician by Southern Tier Pediatrics ("STP") with

hospital privileges at WCA Hospital ("WCA") in Jamestown, New York.  On May 3,

2010, Plaintiff gave notice of his resignation from STP and informed both STP and

WCA that he intended to work until June 30, 2010.  Dkt. # 72, Exhs. B-D.  His letter of

resignation was received by WCA and forwarded to the Credentials Committee on May

11, 2010.  Dkt. #72, Exh. E.

On June 2, 2010, Plaintiff was the on-call pediatrician at WCA.  At 12:50 p.m.,

Plaintiff was telephoned by Donna Barker R.N. at the direction of obstetrician Dr.

Robert Daniels and asked to report to the Labor and Delivery Department to attend the

high-risk birth of a premature infant.  Dkt. #72, Exh. F.  Plaintiff asked Nurse Barker to

contact his supervisor, Dr. Tariq Khan, who arrived at 1:08 p.m.  Nurse Barker

telephoned Plaintiff again, but he did not answer his telephone.  Plaintiff arrived at 1:12.

The baby was delivered at 1:16 and was "apneic with severe brachycardia."  Dkt. # 72,

Exh. G.   Efforts to resuscitate the infant were unsuccessful and the baby was declared

dead at 1:34.  *Id.*

In his progress notes following the delivery and death of the baby, Plaintiff made

notations that were characterized by the OB/GYN Care Evaluation Committee as

"factually incorrect."  Dkt. # 72, Exh. K.   Plaintiff wrote that the delivery should not have

occurred at WCA, but rather the mother should have been transferred to Women and

---

[1]  The facts set forth in the text are adapted from the pleadings and the materials submitted in connection with this motion, including declarations, discovery materials, and the parties' Local Rule 56(a) statements. See Local Rule Civ. P. 56(a)(1), (2) (W.D.N.Y., effective Jan. 1, 2012).

Children's Hospital of Buffalo ("WCHOB"), as WCA does not have the facilities to care for such high-risk premature babies. Dkt. #72, Exh. I.

On June 7, 2010, the OB/GYN Department at WCA conducted a case review of the infant death. Dkt. #72, Exh. K. WCHOB had been contacted but declined transfer of the mother prior to active labor because the fetus was considered non-viable until 23 weeks gestation. Additionally, an obstetrician expressed concern about Plaintiff's response and his progress note. WCA's Medical Director, Dr. Marlene Garone, was to call Plaintiff and "request a correction of the progress note." Additionally, the Department of Pediatrics was directed to review Plaintiff's on-call response. Dkt. #72, Exh. K.

On Friday, June 11, 2010, Plaintiff sent an e-mail to Dr. Garone and Carol Gallagher, WCA's Credentialing Specialist, stating that he was leaving Jamestown and to "kindly close [his] hospital file effective midnight of Sunday June 13, 2010." Dkt. # 72, Exh. M. In a hand-delivered letter from Dr. Khan, Plaintiff was informed that his "limited notice potentially jeopardizes patient care and raises ethical concerns. ..." Dkt. #72, Exh. N. On June 11, 2010, STP terminated Plaintiff's employment. It was noted that Plaintiff left no forwarding address. Dkt. #72, Exh. O.

On June 11, 2010, WCA CEO Betsy Wright contacted Plaintiff by telephone while he was at the offices of STP. Dkt. # 72, Exh. JJ, ¶ 5. She informed him that a quality review of the June 2, 2010 incident was in progress and that he was required to meet with Dr. Garone before he left Jamestown. Both Ms. Wright and Dr. Garone understood that Plaintiff had agreed to meet with Dr. Garone on Monday, June 14, 2010. *Id.,* ¶ 6.

3

Plaintiff did not appear for the meeting with Dr. Garone on June 14, 2010.  In an e-mail sent that day, Dr. Garone referenced the meeting for which he failed to appear and advised Plaintiff that she had "several issues regarding this quality review" which needed to be discussed.  Dkt. # 72, Exh. P.  She asked Plaintiff to contact her as soon as possible and noted that this was "not a request but a requirement following the quality review."  *Id.*

On July 13, 2010, the Pediatric Care Evaluation Committee conducted its review of the June 2, 2010 incident.  Dkt. # 72, Exh. R.  The committee found that Plaintiff initially refused to attend the birth and was delayed in his response.  He then inserted "inflammatory" progress notes in the file and did not respond to requests to correct the medical record.  It was determined that Plaintiff's actions failed to meet the standard of care of WCA Hospital, and a letter of reprimand was sent to Plaintiff.  Dkt. # 72, Exh. S.

On July 22, 2010, Defendant Wright sent Plaintiff a letter, by certified mail with return receipt requested, informing him that his failure to attend the meeting of June 14, 2010 was "consistent with the New York State definition of professional misconduct" and that the incident would be reported to the New York State Office of Professional Medical Conduct ("OPMC").  Dkt. # 72, Exh. T.  The letter was returned as  "Refused." Dkt. # 72, Exh. U.

On August 26, 2010, WCA sent an Adverse Action Report to the National Practitioner Data Bank ("NPDB").  Dkt. # 72, Exh. V.  The reason for the report was plaintiff's "refus[al] to attend a delivery for a critically ill infant when he was the responsible physician on call."  Additionally, Plaintiff had "resigned his medical staff

4

privileges and left the area while under investigation for his failure to respond as required." *Id.* WCA sent a copy of the Adverse Action Report to the New York State Office of Professions. Dkt. # 72, Exh. W.

Plaintiff commenced this diversity action against his former employer WCA and its CEO Betsy Wright[2] on December 16, 2010. Plaintiff, now a resident of Texas, alleged that after he resigned and left WCA, the defendants

> launched a bogus investigation and filed a false report with the U.S. Department of Health and Human Services National Practitioner Data Bank ("NPDB") about Dr. Hooda after Dr. Hooda expressed concerns with hospital management about WCA not having the proper facilities and staff to deliver and care for high-risk and premature infants.

Dkt. # 1, ¶ 11. As a result of this negative report, Plaintiff alleged that he is unable to obtain a permanent Texas medical license, will ultimately be discharged from his position at the University of Texas Medical Branch School of Medicine ("UTMB"), and will be unable to secure employment as a physician anywhere in the United States. *Id.,* ¶¶ 109, 110, 112. Plaintiff also alleged that he suffered emotional distress, humiliation, diminished reputation, and loss of prospective business opportunities. He seeks injunctive relief and money damages based on causes of action for defamation, tortious interference with prospective business relations, conspiracy to damage his professional reputation, and negligent failure to conduct a proper investigation of the events forming the basis for the adverse report.

On January 21, 2011, Plaintiff was interviewed by an investigator with the New York State Department of Health OPMC. Dkt # 72, Exh. Z. Plaintiff admitted that on

---

[2] Initially, plaintiff named Drs. Tariq M. Khan, Virginia B. Campion, and Robert L. Daniels as defendants, but voluntarily dismissed the action against these defendants without prejudice. Dkt. ## 11, 31, 32.

June 2, 2010, he was the pediatrician on-call, but that he asked Nurse Barker to notify

Dr. Khan to attend the birth.  He also admitted that Dr. Khan instructed him to attend

the birth, and that he stopped at the Administrative Office at WCA before proceeding to

Labor and Delivery.  Plaintiff admitted that he received a telephone call from Defendant

Wright on June11, 2010 informing him that the Defendants wished to discuss the June

2, 2010 delivery, but he denied that he agreed to meet with Dr. Garone on June14,

2010.  *Id.*

    Following the investigation, on February 25, 2011, the OPMC closed the file with

no further action anticipated.  Dkt. # 72, Exh. AA.  It was noted that the evidence

supported the Defendants' position that Plaintiff had no intention of presenting for the

delivery on June 2, 2010 and that his actions "caused unnecessary stress among the

patient care team . . .."  *Id.*

    On April 4, 2011, Plaintiff sought review of the Adverse Action Report by the

Secretary of the Department of Health and Human Services ("HHS").  WCA served a

response on August 11, 2011.  Dkt. # 72, Exh. EE.  In a Secretarial Review Decision

dated November 7, 2011, the Secretary determined that "there is no basis to conclude

that the report should not have been filed or . . . that it is not accurate, complete, timely,

or relevant."  Dkt. # 72, Exh. GG.  Accordingly, it was determined that the Adverse

Action Report should be maintained by the NPDB.  *Id.*

**DISCUSSION**

**1. Standard of Review**

The Defendants seek summary judgment on the grounds that they are immune from all of plaintiff's claims for money damages under the Health Care Quality Improvement Act of 1986 ("HCQIA"), 42 U.S.C. § 11101 *et seq*. *See* Dkt. # 48, ¶¶ 19-23. This statute provides health care entities and their "professional review bod[ies]" with presumptive immunity from civil liability for peer review activity regarding the competence or professional conduct of individual physicians. *See* 42 U.S.C. § 11111(a)(1) (limitation on damages for professional review actions). Additionally, the HCQIA provides immunity with respect to any report filed under the statute "without knowledge of the falsity of the information contained in the report." 42 U.S.C. § 11137(c). The NPDB itself (the entity with which the allegedly false and defamatory statements about plaintiff were lodged) was established pursuant to the HCQIA to serve as an "information clearinghouse" of confidential adverse information related to the peer review of medical professionals, with the stated purpose of "restrict[ing] the ability of incompetent physicians to move from State to State without disclosure or discovery of the physician's previous damaging or incompetent performance." 42 U.S.C. § 11102(2).

The standard of review on a motion for summary judgment is well-settled. Summary judgment may be granted only where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant bears the burden of demonstrating the

absence of a material factual question, and in making this determination, the court must view all facts "in the light most favorable" to the non-movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Holcomb v. Iona Coll.,* 521 F.3d 130, 132 (2d Cir. 2008). To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed.R.Civ.P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The HCQIA provides for a rebuttable presumption that a professional review action has met its standards. *See* 42 U.S.C. § 11112(a). This statutory presumption adds a "rather unconventional twist" to the burden of proof in the summary judgment standard of review. *Sugarbaker v. SSM Health Care*, 190 F.3d 905, 912 (8th Cir. 1999) (internal quotation omitted). Accordingly, on summary judgment, a court considering a challenge to a professional review action must ask itself, "Might a reasonable jury, viewing the facts in the best light for [the physician], conclude that he has shown, by a preponderance of the evidence, that the defendants' actions are outside the scope of § 11112(a)?" *Kunajukr v. Lawrence & Memorial Hosp., Inc.,* 2009 WL 651984, *7

(D.Conn. January 12, 2009) (quoting *Austin v. McNamara*, 979 F.2d 728, 734 (9th Cir. 1992)). Stated another way, the plaintiff has the burden of overcoming the presumption of immunity by showing that the review process was not reasonable. *Bryan v. James E. Holmes Reg'l Med. Ctr.*, 33 F.3d 1318, 1333 (11th Cir. 1994) (quoting *Austin, supra).*

**2. Immunity under the HCQIA**

Defendants argue that they are immune from Plaintiff's damage claims under the HCQIA as they commenced a professional review action against the Plaintiff which met all statutory standards and filed an accurate report to the NPDB. Plaintiff opposes the motion, arguing that the Adverse Action Report was not properly filed. He states that the report was factually inaccurate, and filed in bad faith and in retaliation for Plaintiff's complaints about the quality of care at WCA. Plaintiff also argues that he was not provided adequate notice and hearing procedures under the HCQIA with regard to any professional review by WCA.

The HCQIA contains two separate immunity provisions - immunity for reports made to the NPDB pursuant to 42 U.S.C. § 11137 and professional review action immunity pursuant to 42 U.S.C. §§ 11111 and 11112 . Each immunity provision will be analyzed in turn.

**A. Report Immunity**

Section 11137(c) of the HCQIA provides that no person or entity "shall be liable in any civil action with respect to any report made under this subchapter . . . without knowledge of the falsity of the information contained in the report." "Thus, immunity for

9

reporting exists as a matter of law unless there is sufficient evidence for a jury to conclude the report was false and the reporting party knew it was false." *Kunajukr v. Lawrence & Memorial Hosp., Inc.,* 2009 WL 651984, at *23 (quoting *Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1334 (10th Cir.1996)). Immunity under this section extends to state law tort claims where the damages are solely the result of a report to the NPDB. *See Lee v. Hosp. Auth. Of Colquitt Cnty.,* 353 F.Supp.2d 1255, 1265 (M.D. Ga. 2004), *aff'd,* 397 F.3d 1327 (11th Cir. 2005). Here, all of Plaintiff's claims arise from the Adverse Action Report filed with the NPDB.

It is undisputed that Plaintiff informed STP and WCA of his resignation on May 3, 2010, but that he intended to work until June 30, 2010. He was the on-call pediatrician on June 2, 2010. The OB/GYN case review of June 7, 2010 raised concerns about plaintiff's delayed response and "factually incorrect" progress notes. Further action was directed to be taken by Dr. Garone and the Department of Pediatrics. Dkt. # 72, Exh. K. On June 11, 2010, Plaintiff informed his superiors that he was leaving Jamestown and advised WCA to close his "hospital file" effective midnight June 13, 2010.

Section 11133(a)(1)(B)(i) provides that a health care entity which "accepts the surrender of clinical privileges of a physician . . . while the physician is under investigation by the entity relating to possible incompetence or improper professional conduct . . . shall report to the Board of Medical Examiners . . .." WCA accepted the surrender of plaintiff's clinical privileges at WCA effective June 13, 2010, following the initiation of an investigation on June 7, 2010. Accordingly, defendants were legally obligated to file a report with the NPDB.

Thereafter, Plaintiff requested review of the Adverse Action Report by the Secretary of the HHS. Such review by the Secretary is limited to review of the report for accuracy of factual information and to ensure that the information was required to be reported. 45 C.F.R. § 60.16(c)(2) (2012). Having reviewed submissions from Plaintiff and the Defendants, the Secretary concluded that the report was factually accurate. The Secretary found that Plaintiff was under investigation at WCA at the time he surrendered his clinical privileges and thus WCA was legally required to report to the NPDB Plaintiff's voluntary surrender of privileges while under investigation. Dkt. # 72, Exhs. FF, GG. Additionally, the Secretary found that the basis for the investigation of Plaintiff's on-call conduct was his initial refusal to attend the high-risk delivery. Dkt. # 72, Exh. FF. All parties acknowledge that Plaintiff eventually appeared at the hospital.

Plaintiff argues that defendants do not enjoy report immunity under this statute because he actually "resigned" on May 3, 2010. While Plaintiff informed STP and WCA of his resignation on May 3, 2010, it is undisputed that Plaintiff intended to work until June 30, 2010 and in fact continued to enjoy clinical privileges at WCA until June 13, 2010. In an e-mail to Defendant Wright and Dr. Garone on May 3, 2010, Plaintiff stated that he would fulfill his "contractually mandated duties for STP including Level 1 Neonatology care at WCA Hospital during the notice period." Dkt. # 72, Exh. B. In his formal resignation letter to Dr. Garone dated May 11, 2010, Plaintiff stated that his "last day of work is anticipated to be June 30, 2010." Dkt. # 72, Exh. D. On June 11, 2010, Plaintiff advised WCA to close his "hospital file" effective midnight June 13, 2010.

The HCQIA requires a report to the NPDB upon a physician's "surrender of clinical privileges" while under investigation. *See* 42 U.S.C. § 11133(a)(1)(B). Defendants accepted the surrender of Plaintiff's clinical privileges effective midnight on June 13, 2010, following the commencement of the investigation. It is irrelevant for purposes of the statute that Plaintiff tendered a letter of resignation on May 3, 2010, prior to the incident of June 2, 2010 and subsequent investigation. Moreover, "[i]n evaluating a report to the NPDB, courts do not evaluate whether the underlying merits of the reported action were properly determined. Instead, the court's role is to evaluate whether the report itself accurately reflected the action taken." *Kunajukr,* 2009 WL 651984, at *23. For purposes of this subsection of the statute, the outcome of the investigation is irrelevant, as is any assertion that Plaintiff's progress notes were a justified expression of his medical opinion.

To the extent that Plaintiff argues that the NPDB report was filed maliciously, in bad faith, or in retaliation for his criticism of the quality of care at WCA, none of these arguments goes to the truthfulness or accuracy of the report.[3] Plaintiff has failed to raise an issue of fact suggesting that the report was false and that the Defendants knew of its falsity. Accordingly, Defendants should be immune from liability for damages with respect to the Adverse Action Report filed with the NPDB. *See* 42 U.S.C. § 11137(c). As all of Plaintiff's claims arise from the report, Defendants' motion for summary judgment dismissing the claims for money damages should be granted.[4]

---

[3] At oral argument, Plaintiff cited a case from this District, *Salamon v. Our Lady of Victory Hosp.*, 867 F.Supp.2d 344 (W.D.N.Y. 2012), in opposition to the motion. That case is inapposite. The HCQIA does not provide immunity to claims brought under Title VII, the basis for the suit in *Salamon*. Additionally, to the extent that the District Court allowed a pendent state court claim to stand, that claim did not implicate the reporting subsection of the HCQIA.

[4] Plaintiff's claim for injunctive relief will be addressed separately.

**B.  Professional Review Action Immunity**

If the District Court agrees that the Defendants are entitled to so-called "report immunity" under the HCQIA, it need not determine whether the Defendants alternatively enjoy professional review action immunity pursuant to the HCQIA.  Section 11111(a)(1) provides that, if a "professional review action" (as defined in § 11151) meets certain due process and fairness requirements, those participating in such a review process shall not be liable under any state or federal law for damages for the results.  42 U.S.C. § 11111(a)(1).[5]  For purposes of establishing immunity under section 11111 of the HCQIA, a professional review action must be taken (1) in the reasonable belief that the action was in the furtherance of quality health care, (2) after a reasonable effort to obtain the relevant facts, (3) after adequate notice and hearing procedures are afforded to the physician involved, or after other procedures that are "fair to the physician under the circumstances,..." and (4) in the reasonable belief that the action was warranted by the facts.  42 U.S.C. § 1112(a).

A "professional review action" is defined as:

> an action or recommendation of a professional review body which is taken or made in the conduct of professional review activity, which is based on the competence or professional conduct of an individual physician (which conduct affects or could affect adversely the health or welfare of a patient or patients), and which affects (or may affect) adversely the clinical privileges, or membership in a professional society, of the physician. Such term includes . . . professional review activities relating to a professional review action.

42 U.S.C. § 11151(9).  "Professional review activity" is defined as an activity of a health care entity undertaken to determine whether a physician may have clinical privileges,

---

[5]  This statute does not apply to damage claims brought under civil rights statutes, including Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e *et seq.*

the scope or conditions of such privileges, or whether to change or modify those privileges. *See* 42 U.S.C. § 11151(10). Thus, professional review "activity," which includes investigations and other precursors to formal professional review action, is encompassed within the definition of "professional review action" for purposes of immunity under the statute. *See Austin,* 979 F.2d at 737; *Kunajukr,* 2009 WL 651984, at *8.

In this case, Plaintiff was the subject of professional review activity - investigation and discussion by the OB/GYN and Pediatric Care Evaluation Committees. The letter of reprimand issued at the recommendation of the Pediatric Care Evaluation Committee (Dkt. # 72, Exh. S) likely qualifies as "professional review action," as it is a recommendation of a professional review body which was based on Plaintiff's competence or professional conduct and which may adversely affect the clinical privileges of the physician. 42 U.S.C. § 11151(9). It is not clear from the statute or the existing case law whether the filing of an Adverse Action Report with the NPDB is a "professional review action" for purposes of the HCQIA. Typically, such a report contains information regarding a professional review action. While the NPDB report is an "action" of a professional review body, the statute separately provides immunity for the filing of a report with the NPDB unless the report is false and filed with knowledge of its falsity. 42 U.S.C. § 11137(c). A consideration of professional review action immunity is thus wholly unnecessary to the determination of this motion.

Should the Court decide to address this alternate basis for immunity, it must determine whether Plaintiff has rebutted the presumption that Defendants met the standards set out in section 11112. Plaintiff has not set forth any evidence rebutting the

Defendants' reasonable belief that the professional review activity was taken in furtherance of quality health care or warranted by the facts, or after a reasonable effort to obtain the facts of the matter. Clearly, Defendants were justified in conducting a quality review of a neonatal death. It is apparent from the record that plaintiff was delayed in his response to the delivery, that WCA was unable to transfer the expectant mother to another facility given the gestational age of the fetus, and that Plaintiff inserted progress notes into the patient's file which were considered "factually inaccurate" and "inflammatory." Plaintiff's argument that he was a "whistle-blower" and that the investigation was commenced in retaliation for his voicing of concerns about the inability of WCA to care for extremely premature babies is unavailing. In the context of HCQIA immunity review, "the subjective bias or bad faith motives of the peer reviewers is irrelevant." *Lee v. Trinity Lutheran Hosp.,* 408 F.3d 1064, 1072 (8th Cir. 2005) (quoting *Sugarbaker,* 190 F.3d at 914).

Plaintiff's remaining argument is that Defendants did not provide adequate notice of the review action. The only written notice to Plaintiff of the pending review action appears to be the June 14, 2010 e-mail from Dr. Garone. In that e-mail, Dr. Garone referenced the incident of June 2, 2010 and informed Plaintiff that the case was referred for quality review to both the OB/GYN and Pediatrics Departments. Dr. Garone stated that it was "imperative" that Plaintiff meet with her and advised him that this was not a request, but a requirement following the quality review. Dkt. # 72, Exh. P.

The Court recognizes that the notice provided to Plaintiff did not strictly comport with the requirements set forth in section 11112(b) in that it does not contain an explicit statement that a review action against Plaintiff was proposed, the reasons for the

15

action, the fact that Plaintiff had a right to a hearing, or a summary of Plaintiff's rights at the hearing. *See* 42 U.S.C. § 11112(b). Nonetheless, notice was sufficient under the circumstances. The notice and hearing requirements of § 11112(a)(3) regulate hearing-type procedures, not the investigatory precursors to professional review action as in this case. *See Kunajukr*, 2009 WL 651984, at *8. Plaintiff left WCA before the investigation was completed and no hearing was conducted.

The question on this motion is whether the notice and procedures provided to Plaintiff were "fair to the physician under the circumstances." 42 U.S.C. § 11112(a)(3). While there is scant case law interpreting the statute, strict compliance with the statutory provisions is clearly not required. *See* 42 U.S.C. § 11112(b) (professional review body's failure to meet the notice conditions described in section 11112(b) "shall not, in itself, constitute failure to" provide notice and hearing procedures that are fair to the physician under the circumstances).

Ultimately, the question can be resolved by resort to the applicable standard of review. As stated above, "[a] professional review action shall be presumed to have met the preceding standards ... unless the presumption is rebutted by a preponderance of the evidence." 42 U.S.C. § 11112(a). The Court must ask whether a reasonable jury, viewing the facts in the light most favorable to Plaintiff, could conclude that he has shown, by a preponderance of the evidence, that the hospital's actions are outside the scope of section 11112(a). *See Lee v. Trinity Lutheran Hosp.,* 408 F.3d at 1070 -71.

The Court concludes that Plaintiff has failed to satisfy his burden of producing evidence that would allow a reasonable juror to conclude that WCA's investigative disciplinary process was unreasonable and failed to meet the standards of the HCQIA.

In his interview with the New York State OPMC, Plaintiff admitted that he took a telephone call from Defendant Wright on June 11, 2010, in which she informed him that he was not to leave Jamestown without discussing the June 2, 2010 neonatal death. In the June 14, 2010 e-mail from Dr. Garone, which he apparently ignored, Plaintiff was given explicit notice of the review of the June 2, 2010 incident and was told that he was required to meet with her. In an affidavit, Plaintiff admitted that both Drs. Khan and Daniels were upset with him regarding the progress notes he inserted in the patient file. Thus, Plaintiff cannot argue that he was not on notice of issues with regard to his conduct as it related to the incident of June 2, 2010. Dkt. # 78, Exh. A, ¶¶ 43-46. Plaintiff was given an opportunity to be heard and to correct the progress notes, but left Jamestown with no forwarding address. Upon a thorough review of the facts, including the unusual situation in which Plaintiff abruptly left his employment and the area and ignored all attempts to meet with the Defendants regarding the June 2, 2010 incident, the Court finds that the notice and the procedures provided to Plaintiff were fair under the circumstances. Accordingly, the Court concludes that the Defendants should enjoy professional review immunity as to all of Plaintiff's claims for money damages pursuant to the HCQIA.

### 3. Plaintiff's Request for a Preliminary Injunction

Should the District Court agree that the Defendants are immune from damages pursuant to the HCQIA, Plaintiff's complaint, to the extent that he seeks money damages, must be dismissed. However, Plaintiff also seeks a preliminary injunction ordering the Defendant WCA "to withdraw and void the false report from the NPDB,

through any and all procedures mandated by the NPDB, while this action is pending." Dkt. # 1, ¶ 198. "HCQIA immunity is limited to suits for damages; there is no immunity from suits seeking injunctive or declaratory relief." *Sugarbaker v. SSM Health Care*, 190 F.3d at 918. Accordingly, the Court must determine if plaintiff has established any grounds for injunctive relief.

Having reviewed the administrative framework regarding the filing of NPDB reports, the Court concludes that it has no authority to order WCA to withdraw the Adverse Action Report. The regulations provide that Plaintiff's exclusive remedy in challenging an Adverse Action Report is to dispute the accuracy of the report and request a review by the Secretary. 45 C.F.R. § 61.15(b)-(c). The regulations implementing the NPDB do not afford a physician the right to sue a reporting entity for an inaccurate report. 45 C.F.R. § 61.1 *et seq*. (1999). Additionally, "[t]here is no authority for the proposition that HCQIA creates an independent private cause of action for individuals who claim they were injured as a consequence of a Data Bank report filed in compliance with the HCQIA." *Diagle v. Stulc*, 694 F.Supp.2d 30, 35 (D.Me. 2010).

Here, Plaintiff requested review of the Adverse Action Report by the Secretary of HHS and the report was found to be factually accurate and appropriately filed. While such an agency determination may be reviewed under the Administrative Procedure Act, *see Leal v. Secretary,* 620 F.3d 1280 (11th Cir. 2010), the Secretary is not a party to this action and Plaintiff has not sought a judicial review of the Secretary's administrative determination.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A plaintiff must satisfy each part of the standard by a preponderance of the evidence. *WestLB AG v. BAC Fla. Bank*, 2012 WL 3135825, *3 (S.D.N.Y. August 2, 2012). Here, Plaintiff has failed to establish a likelihood of success on the merits as he has failed to assert a cognizable claim for injunctive relief. *See Moore v. John Deere Health Care Plan, Inc.,* 492 Fed. Appx. 632, 643 (6th Cir. 2012) (plaintiff failed to assert a cognizable claim for relief where he sought an injunction on the grounds that statements in an Adverse Action Report caused "irreparable harm, as his ability to earn a living has been impeded."). Accordingly, the Defendants' motion for summary judgment dismissing the request for injunctive relief should be granted.

### 4. Defendants' Counterclaim for Attorneys' Fees

Finally, Defendants seek attorneys' fees pursuant to section 11113 of the HCQIA. That section provides

> to the extent that a defendant has met the standards set forth under section 11112(a) . . . and the defendant substantially prevails, the court shall . . . award . . . the cost of the suit attributable to such claim, including a reasonable attorneys' fee, if the claim or the claimant's conduct during the litigation of the claim was frivolous, unreasonable, without foundation, or in bad faith.

42 U.S.C. § 11113. Should the District Court agree that the Defendants are immune from all claims for damages, both money damages and injunctive relief, they have

substantially prevailed in the action. If the District Court further agrees that Defendants have met the standards of section 11112(a), that the professional review action was taken in furtherance of quality health care, after a reasonable effort to obtain the facts, after notice and hearing procedures that were fair to the Plaintiff under the circumstances, and in the reasonable belief that the action was warranted by the facts, the Court must then determine whether the Plaintiff's claims or conduct during the litigation were "frivolous, unreasonable, without foundation, or in bad faith." If the Court declines to consider the Defendants' claim of professional review action immunity under sections 11111 and 11112, then the Defendants would not be entitled to damages under section 11113.

Defendants argue that Plaintiff's conduct in the course of this litigation has been unreasonable. Plaintiff made no attempt to resolve the dispute before commencing the action and failed to exhaust his administrative remedies before filing suit. Instead of contacting WCA to resolve the issue at the onset, Plaintiff left the area and filed his lawsuit in Texas. The lawsuit was commenced before the New York State OPMC investigation occurred and prior to the review by the Secretary of HHS.

Whether a party's conduct is frivolous or without foundation is a question committed to the sound discretion of the district court. *Johnson v. Nyack Hosp.,* 964 F.2d 116, 123 (2d Cir. 1992). This is a close question, but the Court concludes that attorneys' fees should not be awarded in this case. The HCQIA is a complex statute, and there is very little case law, particularly from the Second Circuit, interpreting its provisions. It cannot be said that plaintiff's claims were completely frivolous or that his litigation conduct was unreasonable. Accordingly, this Court recommends that the Defendants' counterclaim seeking attorneys' fees be denied.

**CONCLUSION**

For the foregoing reasons, it is respectfully recommended that the Defendants'
motion for summary judgment (Dkt. # 72) be GRANTED in part and that Plaintiff's
complaint be dismissed.  It is further recommended that Defendants' motion for
summary judgment on their counterclaim seeking attorneys' fees be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED that this Report and Recommendation be filed with the Clerk of the
Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the
Clerk of the Court within fourteen (14) days of receipt of this Report and
Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b), and Local
Rule 72.

The district judge will ordinarily refuse to consider *de novo* arguments, case law
and/or evidentiary material which could have been, but were not presented to the
magistrate judge in the first instance. *See, e.g., Patterson–Leitch Co. v. Massachusetts
Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of
such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S.
140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d
Cir.1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the
Western District of New York, any written objections this Report and Recommendation
"shall specifically identify the portions of the proposed findings and recommendations to

which objection is made and the basis for such objection, and shall be supported by legal authority." Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.

DATED:      Buffalo, New York
              April 30, 2013

                        *__s/ H. Kenneth Schroeder, Jr.__*
                        H. KENNETH SCHROEDER, JR.
                        United States Magistrate Judge